775 So.2d 1138 (2000)
STATE of Louisiana
v.
Rodney A. HENDERSON.
No. 2000-KA-0511.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 2000.
*1139 Harry F. Connick, District Attorney, Orleans Parish, Jeffrey W. Davidson, Assistant District Attorney, Orleans Parish, New Orleans, LA, Counsel for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
(Court composed of Judge MURRAY, Judge BAGNERIS, and Judge TOBIAS).
MURRAY, J.
Rodney A. Henderson appeals his conviction for simple possession of crack cocaine, a violation of La. R.S. 40:967 C. We affirm for the reasons that follow.

FACTS
Shortly before 2:00 p.m. on March 4, 1997, New Orleans Police Officers Eric Gillard and Brian Gilmore were stopped at the intersection of Mirabeau Street and Press Drive when they observed a maroon car with a broken taillight and a missing trunk lock mechanism drive past them on Press Drive. Believing the vehicle may have been stolen, the officers put on their siren and lights to notify the driver to pull over.
According to Officer Gillard, the vehicle traveled another three to four blocks before stopping, while the female passenger kept looking back at the police car. After both vehicles had stopped and the officers were approaching the maroon car, the driver slouched down in the front seat but his shoulders appeared to be moving "like he was trying to get something." At the same time, the passenger was heard yelling at the driver as she continued to glance back at the policemen.
The officers ordered the driver, Rodney A. Henderson, and the passenger, Keita Gant, to place their hands outside the windows where they could be seen. Ms. Gant complied immediately, so Officer Gilmore went to the passenger door and asked her to step out of the car. In the meantime, Officer Gillard watched as Mr. Henderson continued to move around as if he was sticking something under the seat. Once his hands were in view, Officer Gillard approached the driver's door and noticed that the steering column had been tampered with. Therefore, he handcuffed Mr. Henderson and, while getting him out of the car, observed that the radio was missing and there were many small plastic baggies scattered all over the front seat and the floor. Although Officer Gillard saw no contraband in plain view, he believed *1140 the car should be searched based upon the presence of bags commonly used in drug trafficking.
Both Ms. Gant and Mr. Henderson were separately escorted towards the patrol car. Officer Gillard told Mr. Henderson that he was under investigation for possession of a stolen vehicle, and advised him of his Miranda rights. Mr. Henderson explained that the car was his brother's and that it had been stolen, stripped down, and only recently recovered. The ownership papers in the vehicle showed a last name other than "Henderson," however, so a radio request to check the VIN number was made. Mr. Henderson was found to have over $1,200 cash in hundred-dollar bills in his pockets, which he said was from his income tax refund.
In the meantime, Officer Gilmore had been speaking with Ms. Gant. According to the police report, Ms. Gant told Officer Gilmore that "the vehicle and the currency were for [Mr. Henderson's] brother." Officer Gillard called for a drug detection dog to check the car for contraband.[1] While they waited, Mr. Henderson asked the officers several times to let his girlfriend go because "she had nothing to do with it."
Within five minutes of Mr. Henderson's arrest, Officer Robert Haar and another policeman arrived at the scene to assist. After speaking briefly with the arresting officers, Officer Haar walked over to search the vehicle. He saw that the car had obviously been stripped, as the radio and speakers were missing, and there were several baggies on the seat and floorboard. When he opened the driver's door, he saw "two plastic bags sticking out of a speaker compartment which [sic] the speaker had been removed." He easily pulled the bags from the hole in the door panel, and saw that they contained a rock-like substance, later confirmed to be cocaine. Both Mr. Henderson and Ms. Gant were arrested and charged with possession of cocaine.[2]
Keita Gant's description of events contradicted that of the police in several respects. She testified that Mr. Henderson pulled over immediately when signaled by the police, and he then got out and walked towards the patrol car. He and the two officers met between the vehicles, and she saw Mr. Henderson pull his ID out of his wallet. After speaking into a hand-held radio, one of the officers handcuffed Mr. Henderson. Ms. Gant then got out of the car to see what was going on, but was asked to step over to the sidewalk on the passenger side of both vehicles. From that position, she watched the two policemen search the maroon car, but she could not see exactly what they were doing.
After some period of time,[3] a second patrol car pulled up. This officer also searched the maroon car, followed by another search by the fourth policeman to arrive on the scene. Ms. Gant testified that this officer squatted beside the open driver's-side door, and she saw him remove the door panel. Although she could not see exactly what he was doing, she then saw him "come up" holding the bag that purportedly contained drugs.
Ms. Gant further testified that Mr. Henderson's brother had gotten his car back only four or five days earlier. The stereo system, including the front and rear speakers, had been removed, the dashboard, steering column, and the lock on the trunk were broken, and there were bullet holes in the body. Moreover, there was no handle for the passenger-side window, so she could not open it. Ms. Gant stated that there were no plastic bags *1141 lying around in the car, and she had not seen Mr. Henderson with any such bags in his possession. She explained that because he was intending to purchase a car that day, Mr. Henderson was carrying a large amount of cash, partly from his tax refund and partly from his mother.
Mr. Henderson's brother, Ellis Brister, testified that he had been notified only a few days earlier that the police had recovered his 1989 two-door Oldsmobile, previously reported stolen. Finding it stripped and damaged, he had only been able to replace the missing tires and clean the car up by March 4th, when his brother borrowed it. Mr. Brister, who had recently been accepted into the New Orleans Police Academy, stated that the holes left in the door panels when the speakers were removed were large enough to see inside the door; if bags of drugs were stuck in there, they would have been immediately visible. He testified that there were no plastic bags in his car when he last used it, nor had he ever seen Mr. Henderson in possession of such bags. Mr. Brister admitted, however, that he had no knowledge of where his brother had gone or what he had done while using the car that day.

PROCEEDINGS BELOW
On November 13, 1997, Mr. Henderson was charged by bill of information with possession of crack cocaine, assigned as case # 393-128 to Section "H" of Orleans Parish Criminal District Court. After taking testimony on January 14 and 30, 1998, the trial court denied a motion to suppress the evidence, but found no probable cause and ordered Mr. Henderson released pending trial.[4]
When the case was called for trial on March 24, 1998, Mr. Henderson waived a jury and elected to be tried by the court. However, the prosecutor made an oral motion to continue because "[m]y main officer is in SWAT training in Baton Rouge. And I think he's essential to the trial since he took all the statements and did most of the investigative work." In the ensuing discussion concerning the officer's anticipated testimony, as provided under Criminal Procedure articles 709 and 710, Judge McKay appeared to question the strength of the State's case. Ultimately, however, after the prosecutor admitted that denial of the continuance would "probably" result in a dismissal and re-institution of the charges, the court denied the State's oral motion to continue. The State, in turn, entered a nolle prosequi.
Later that same day, a new bill of information was filed and assigned as case # 396-592 to Section "G." However, as a reinstituted case, it was transferred under the Local Rules of Court back to Section "H," now presided over by Judge Hangartner. At the arraignment on April 13, 1998, defense counsel moved to recuse Judge Hangartner and, claiming the dismissal and reinstitution was improper, to quash the charges. The recusal motion was subsequently granted, and the case was realloted to Section "F."
On July 21, 1998, the court heard arguments on the motion to quash, which was denied. Mr. Henderson then waived his right to trial by jury, and was subsequently found guilty as charged by the court. After his post-trial motion in arrest of judgment was denied, Mr. Henderson pled guilty to a multiple bill and was sentenced as a second felony offender to thirty months imprisonment, without benefit of probation or suspension of sentence. This appeal followed.

ARGUMENTS AND DISCUSSION

ASSIGNMENTS # 1 AND # 2
In Mr. Henderson's first two assignments of error, he asserts that "the State's abuse of its nolle prosequi power" requires *1142 the reversal of his conviction and the granting of his motion to quash. He first contends that the State is not entitled to grant itself a continuance through a dismissal and reinstatement of charges when, as here, it did not comply with the procedural and substantive requirements of Criminal Procedure articles 707-710.[5] Mr. Henderson further argues that this abuse violated his due process rights because it was used to present the case for trial by "a more sympathetic judge," in contravention of the random allotment required by State v. Simpson, 551 So.2d 1303 (La.1989). Because the State used its power of dismissal to obtain what it was otherwise not entitled to have, i.e., a delay in the trial and a re-allotment of the case, Mr. Henderson maintains that the charges must be quashed.
However, Article 691 of the Code of Criminal Procedure explicitly grants the State the authority to dismiss any prosecution:
The district attorney has the power, in his discretion, to dismiss an indictment or a count in an indictment, and in order to exercise that power it is not necessary that he obtain consent of the court. The dismissal may be made orally by the district attorney in open court, or by a written statement of the dismissal signed by the district attorney and filed with the clerk of court. The clerk of court shall cause the dismissal to be entered on the minutes of the court. (Emphasis added.)
Furthermore, the only limitations the Legislature has placed upon the State's ability to reinstate charges previously dismissed is found in Criminal Procedure article 576:
When a criminal prosecution is timely instituted in a court of proper jurisdiction and the prosecution is dismissed by the district attorney ... a new prosecution for the same offense or for a lesser offense based on the same facts may be instituted within the time established by this Chapter or within six months from the date of dismissal, whichever is longer.
A new prosecution shall not be instituted under this article following a dismissal of the prosecution by the district attorney unless the state shows that the dismissal was not for the purpose of avoiding the time limitation for commencement of trial established by Article 578.
Thus, this court has long required that a defendant challenging the State's dismissal and reinstitution of charges must show that his right to a speedy trial was thereby violated. See State v. Firshing, 624 So.2d 921 (La.App. 4th Cir.1993), writ denied, 93-2621 (La.2/25/94), 632 So.2d 760.
In the instant case, Mr. Henderson does not argue that either his statutory or constitutional rights to a speedy trial were violated by the State's dismissal and reinstitution of charges. In addition, because the reinstated case was randomly allotted after Judge Hangartner was recused, he cannot demonstrate that he was prejudiced by the State's entry of a nolle prosequi of the initial bill of information. Accordingly, Mr. Henderson is not entitled to a reversal of his conviction on the grounds asserted in these assignments of error.

ASSIGNMENT # 3
Mr. Henderson next contends that the trial court erred when it denied his motion to suppress the evidence. He argues that although the police may have been justified in stopping his vehicle, the subsequent search was illegal because they did not have probable cause to believe there was contraband in the vehicle.
Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the *1143 warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Tatum, 466 So.2d 29, 31 (La.1985). One such exception is when police officers have probable cause to believe a motor vehicle contains contraband. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); State v. Cowan, 99-2888, p. 2 (La.6/16/00), 763 So.2d 583, 584. In such instances, the right to search extends to locked containers within the vehicle as well as other accessible areas. Cowan at p. 2, 763 So.2d at 584.
In the case at bar, the police officers had reasonable cause for the initial stop, because the maroon car had all the earmarks of a stolen vehicle. Officer Gillard testified that Mr. Henderson did not promptly pull over when signaled to do so, and he was seen moving about as though he were sticking something under the seat. When Mr. Henderson finally stopped, small plastic baggies were seen on the front seat and floorboard of the vehicle. Such evidence was sufficient indicia of narcotics trafficking to support the officer's belief that narcotics were in the vehicle. Furthermore, upon opening the driver's side door, Officer Haar immediately noticed two plastic bags hanging out of a portion of the door where a stereo speaker would normally be found.
The issue of whether distinctive packaging is sufficient to allow an officer to "immediately recognize" contraband was discussed at length by this court in State v. Greathouse, 583 So.2d 137, 139 (La.App. 4th Cir.1991), where the seizure of a film canister with a protruding piece of plastic was upheld. This court found that the police officers' other observations coupled with the piece of plastic protruding from the top of the canister was sufficient to give the officers probable cause to believe that the canister did not contain film but instead contained drugs. In the instant case, it must also be noted that the items observed were such as to be highly subject to loss or destruction given sufficient time. Once the officers had waited for some time without the arrival of the drug-sniffing dog, they were likely faced with a situation of either preserving or possibly losing the observed evidence. These facts and circumstances constitute probable cause for the search of the car. Therefore, the trial court did not err in denying Mr. Henderson's motion to suppress the evidence.

ASSIGNMENT # 4
Finally, Mr. Henderson contends that his conviction must be reversed because the evidence presented was insufficient to prove all essential elements of the crime of possession of cocaine. He argues that the evidence does not establish, beyond a reasonable doubt, either that he placed the crack cocaine in the car or that he knew that it was there. Thus, because it was merely proven that he was in the car when the contraband was found, Mr. Henderson asserts that the State failed to exclude every reasonable hypothesis of innocence.
The standard for appellate review of the sufficiency of the evidence is well established in our law and will not be restated here. See State v. Guillard, 98-0504, pp. 3-4 (La.App.4th Cir.4/7/99), 736 So.2d 273, 276-77, and cases cited therein. To support a conviction for possession of cocaine, the State must prove that the defendant was in possession of the illegal drug and that he knowingly or intentionally possessed it. State v. Shields, 98-2283, p. 3 (La.App.4th Cir.9/15/99), 743 So.2d 282, 283. Guilty knowledge is an essential element of the crime of possession of cocaine. State v. Williams, 98-0806, p. 6 (La.App.4th Cir.3/24/99), 732 So.2d 105, 109, writ denied, 99-1184 (La.10/1/99), 748 So.2d 433. However, "[t]he elements of knowledge and intent are states of mind and need not be proven as facts, but rather may be inferred from the circumstances." Guillard at p. 4, 736 So.2d at 276 (citations omitted).
Possession may be actual or constructive. State v. Smith, 98-2645, p. 4 (La.App.4th Cir.1/26/00), 752 So.2d 314, 317, and cases cited therein. "A person in the area of the contraband may be considered *1144 in constructive possession if it is subject to his dominion and control and he has guilty knowledge." Id. (citations omitted). The defendant's access to where the drugs are found and his physical proximity to the drugs are among the factors that are relevant to a determination of constructive possession. Id.
In the instant case, it is apparent that the trial court credited the officers' version of events rather than that presented by Ms. Gant. Officer Gillard's description of Mr. Henderson's movements after he was signaled to stop suggests an attempt to conceal something before the officer could approach. Moreover, as noted above, the small plastic bags strewn throughout the front area of the passenger compartment were indicative of the presence of contraband, and the bags containing cocaine were plainly visible in the driver's door when Officer Haar opened it up. Mr. Henderson's brother testified that there were no drugs in the car when he had last used it. Thus, the testimony fully supports the conclusion that Mr. Henderson had knowledge of the crack cocaine found next to the driver's seat, an area of the car within his immediate custody and control. Accordingly, the evidence presented by the State is sufficient to support his conviction for the knowing and intentional possession of cocaine.

ERRORS PATENT
A review of the record for errors patent reveals none.

CONCLUSION
For the reasons assigned, Mr. Henderson's conviction and sentence are affirmed.
AFFIRMED.
TOBIAS, J., concurs and assigns additional reasons.
TOBIAS, J., concurring and assigning additional reasons.
I respectfully concur in order to assign additionally reasons for affirmation of the conviction and sentence.
Although the majority found that Mr. Henderson had $1,200.00 in cash in $100 bills in his pockets, I read the record as indicating that the money was in packets of $100 each. This is material because people who deal in drugs frequently have large sums of money made up of small bills.
I further agree with the majority's conclusion with respect to Assignment of Error Number Three. I would note that reinforcing the conclusion are the following facts:
(1) The officers observed a broken taillight and missing trunk lock mechanism on the vehicle.
(2) As the police followed the vehicle, the passenger kept looking back at the following police car.
(3) Upon stopping the vehicle and approaching, Mr. Henderson spontaneously commented that the passenger had "nothing to do with it".
(4) The officers observed plastic baggies strewn about the vehicle; from the officers's experience, they knew plastic baggies are used for transporting and or storage of drugs, leading them to believe a crime was being committed.
NOTES
[1] The record does not indicate that a K-9 unit ever arrived.
[2] A subsequent search of Mr. Henderson's bedroom at his grandmother's house revealed no contraband or evidence of illegal activity. The district attorney's office refused the charges against Ms. Gant.
[3] At a January 1998 suppression hearing, Ms. Gant testified that the wait for assisting officers "could have been like 15, 20 minutes."
[4] Despite this release order under Criminal Procedure article 296, it appears Mr. Henderson remained in custody due to the assertion that he had violated his parole on a 1993 manslaughter conviction.
[5] Mr. Henderson states that the motion was oral, rather than written; that the unavailable witness was not named, and the State failed to show the materiality of his testimony or any diligence in procuring his testimony; and that the State refused to consider a defense stipulation to the facts meant to be proven by the unnamed officer.