MAX N. TOBIAS, JR., Judge.
|,On 2 December 2010, in case number 502-320 on the docket of the Criminal District Court, the State of Louisiana charged the defendant, Harold Sanders (“Sanders”), with armed robbery, a violation of La. R.S. 14:64. The bill of information alleged that Sanders robbed Ricky Johnson (“Johnson”) of U.S. currency on 27 November 2010 using a box cutter as a weapon.
Sanders appeared for arraignment on 8 December 2010 and entered a plea of not guilty to the charge. On 13 December 13, 2010, Sanders filed a motion for speedy trial pursuant to La.C.Cr.P. art. 701 D. On 31 March 2011, the trial court found probable cause to substantiate the charges and set the trial for 16 May 2011.[1] When *623 the case came for trial, the state moved for a continuance due to the absence of the victim, Johnson.[2] The trial court denied the state’s motion to continue, and the state entered a nolle prosequi
On the same day, 16 May 2011, the state reinstituted the armed robbery charge by filing a new bill of information bearing Criminal District Court docket number 505-938. On 25 May 2011, Sanders again entered a plea of not guilty as |2to the armed robbery charge and renewed his motion for speedy trial.[3] The trial court set the matter for trial for 23 June 2011.
On 23 June 2011, after the jury was selected, Sanders filed several motions, including a motion to declare La.C.Cr.P. art. 782 unconstitutional, a motion to quash the bill of information, and a motion in limine.[4] The trial court denied each of Sanders’s motions. Sanders was found guilty by a non-unanimous jury verdict of the lesser offense of simple robbery. On 30 June 2011, Sanders filed a motion for new trial and for post-verdict judgment of acquittal. The trial court denied Sanders’ motion and sentenced him to seven years at hard labor, with credit for time served. This timely appeal followed.

STATEMENT OF FACTS

The armed robbery charge arises out of an incident occurring on 27 November 2010, in which Sanders stole approximately $60 from Johnson.
In November of 2010, Sanders and Johnson were homeless and living on the street near the New Orleans Mission on Oretha Castle Haley Boulevard. Both Sanders and Johnson worked for a temporary labor employment service company, Labor Ready, located on Tchoupitoulas Street. Johnson testified that he owed Sanders approximately eight to ten dollars for drinks that Sanders paid for a few nights before the robbery.
Johnson testified that the day before the robbery, he earned $50 for the worked performed at Labor Ready. Lisa Le-geaux, a representative of Labor Ready, testified that Sanders also worked that same day and was paid approximately $63 for his services. Later that night, Johnson and Sanders went to RHarrah’s Casino.[5] After Johnson won about $80 at the casino, he and Sanders walked around downtown and consumed several drinks. A few hours later, both Johnson and Sanders returned to their “residential” spots located where Calliope Street and Oretha Castle Haley Boulevard intersect. Johnson testified that he fell asleep shortly thereafter.
In the early hours of 27 November 2010, Johnson stated that he awoke to relieve himself and observed Sanders touching a homeless woman in an involuntary and inappropriate manner. He testified that the woman appeared to be asleep or unconscious. After making this observation, Johnson stated that he confronted Sanders and argued with him for about thirty sec *624 onds. Sanders then moved a few yards away, and Johnson went back to sleep. At approximately 2:30 a.m., Johnson testified that “moments later” Sanders woke him up and demanded that he repay him the eight to ten dollars he owed. Johnson stated that he had three $20 bills with no change but was going to give Sanders one of the bills. He testified that when he took out his wallet, Sanders put a box cutter to his throat, took the $60, and fled. Johnson stated that he began following Sanders but came across a police officer at the gas station at St. Charles Avenue on Lee’s Circle. Johnson testified that he and the police officer rode around to try and find Sanders, but could not locate him. Subsequently, the police officer dropped Johnson back at the New Orleans Mission and took the statement of the homeless woman allegedly assaulted. Johnson went back to sleep.
14Later that morning at approximately 8:30 a.m., Johnson spotted Sanders walking towards the New Orleans Mission and called 911 with a description of what Sanders was wearing.
Officer Simone Quintera testified that she was on duty on the morning of 27 November 2011, and that she received a call from a dispatcher regarding a suspicious person wearing a black and blue sweater, black shoes, and a white hat. Officer Quintera stated that she and her partner, Officer McKay, patrolled the area, found a subject matching the description at Clio Street and Oretha Castle Haley Boulevard, and detained him. At trial, she identified Sanders as the person matching the dispatcher’s description. Officer Quintera testified that after stopping Sanders, she placed him in handcuffs and put him in the back of her police car. While Sanders was detained, she took a statement from Johnson. Officer Quintera then searched Sanders and found a box cutter and three $20 bills. As a result, Officer Quintera arrested Sanders and transported him to the police station for booking.

ERRORS PATENT

A review of the record for errors patent reveal none.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

Sanders’ first assignment of error is the trial court erred in denying his motion to quash. Specifically, Sanders claims that the bill of information should be quashed because the state’s practice of entering a nolle prosequi and then reinsti-tuting charges violates his right to a speedy and fair trial.
A motion to quash is the proper procedural mechanism to challenge the state’s nolle prosequi and reinstitution of charges. State v. Hayes, 10-1538, p. 4 (La.App. 4 Cir. 9/1/11), 75 So.3d 8, 12, writ denied, 11-2144 (La.3/2/12), 83 So.3d 1043; see also La.C.Cr.P. art. 531.
A trial court’s ruling on a motion to quash is a discretionary one, which should not be disturbed absent a clear abuse of discretion. State v. Sorden, 09-1416, p. 3 (La.App. 4 Cir. 8/4/10), 45 So.3d 181, 183; State v. Kitchens, 09-0834, 09-0836, p. 4 (La.App. 4 Cir. 3/24/10), 35 So.3d 404, 406-07; State v. Love, 00-3347, pp. 9-10 (La.5/23/07), 847 So.2d 1198, 1206. The trial court’s resolution of motions to quash in cases where the district attorney entered a nolle prosequi and later reinstitut-ed charges must be decided on a case-by-case basis. State v. Batiste, 05-1571, p. 5 (La.10/17/06), 939 So.2d 1245, 1249, citing, Love, 00-3347, p. 14, 847 So.2d at 1209.
The district attorney’s discretionary prosecutorial authority is vast, and Louisiana jurisprudence has recognized that the state has the authority to enter a *625 nolle prosequi and reinstitute the charge. State v. Brown, 11-0947, p. 4 (La.App. 4 Cir. 3/7/12), 88 So.3d 662, 665; Batiste, 05-1571, pp. 5-6, 939 So.2d at 1249; State v. Millet, 05-1122, p. 2 (La.App. 4 Cir. 11/8/06), 946 So.2d 196, 198. Moreover, La.C.Cr.P. art. 691 confers on the district attorney the power to dismiss a formal charge, in whole or in part, and provides that leave of court is not needed. La. C.Cr.P. art. 693 provides, subject to narrowly delineated exceptions, that dismissal of a prosecution “is not a bar to a subsequent prosecution.” La.C.Cr.P. art. 576, regarding the filing of new charges upon dismissal of prosecution, provides:
When a criminal prosecution is timely instituted in a court of proper jurisdiction and the prosecution is dismissed by the district attorney with the defendant’s consent, or before the first witness is sworn at the trial on the merits, or the indictment is dismissed by a court for any error, defect, irregularity, or deficiency, a new prosecution for the same offense or for a lesser offense |fibased on the same facts may be instituted within the time established by this Chapter or within six months from the date of dismissal, whichever is longer.
A new prosecution shall not be instituted under this article following a dismissal of the prosecution by the district attorney unless the state shows that the dismissal was not for the purpose of avoiding the time limitation for commencement of trial established by Article 578.
The Legislature’s reference to “this Chapter” is to “Chapter 1, Limitations Upon Institution of Prosecution,” which includes La.C.Cr.P. arts. 571 through 577.
Here, because Sanders was charged with armed robbery and thus exposed to a sentence to be imposed with hard labor, the pertinent article is La. C.Cr.P. art. 572 A(l), which provides for prosecution to be instituted within six years of the offense. The record indicates that the armed robbery occurred on 27 November 2010; thus the state had until 27 November 2016 to institute prosecution. Given that the state reinstituted the charges against Sanders on 16 May 2011, it did so well within the six-year statutory period.
Under La.C.Cr.P. art. 576, the state must also show that the dismissal of the original prosecution was not for the purpose of avoiding the time limitations set by La.C.Cr.P. art. 578. La.C.Cr.P. art. 578 A(2) requires that trial of a non-capital felony be commenced within two years from the date of institution of the prosecution. Because armed robbery is a non-capital felony, the state had to bring Sanders to trial within two years from the date of the bill of information. The original bill of information was filed on 2 December 2010, and the state entered nolle prosequi on 16 May 2011. We do not find that the state dismissed the first 17case in order to avoid the time limitations of La.C.Cr.P. art. 578. Thus, the state timely reinstitut-ed prosecution of armed robbery.[6]
The state’s dismissal-reinstitution authority, however, may be overborne under the circumstances of any given case by proof either that the defendant’s right to a fair trial was violated or that the defendant’s constitutional right to a speedy trial was violated. Brown, 11-0947, p. 6, 88 So.3d 662, 665, citing State v. King, 10- *626 2638, p. 6 (La.5/6/11), 60 So.3d 615, 618. A defendant challenging the prosecution’s dismissal and subsequent reinstitution of charges bears the burden of proof. State v. Henderson, 00-0511, p. 7 (La.App. 4 Cir. 12/13/00), 775 So.2d 1138, 1142.
The right to a speedy trial is guaranteed by both the federal and state constitutions. U.S. Const. Amend. 6; La. Const. Art. I, § 16. In addition to the statutory right to a speedy trial recognized by La.C.Cr.P. art. 701 A, a defendant also has a fundamental, constitutional right to a speedy trial.[7] State v. Scott, 04-1142, p. 11 (La.App. 4 Cir. 7/27/05), 913 So.2d 843, 849. The standard for analyzing a defendant’s claim that his constitutional right to a speedy trial has been violated is a four-factor test enunciated in Barker v. Wingo, 407 U.S. 514, 530, 531-32, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which is as follows: (1) the length of the delay, (2) the reason for the delay, (3) the defendant’s assertion of his right to a speedy trial, and (4) the prejudice to the defendant. Batiste, 05-1571, p. 7, 939 So.2d at 1250. The circumstances of each individual case will determine the weight to be ascribed to the length of and the reason for the delay. Id. “[T]he delay that can be tolerated for Ran ordinary street crime is considerably less than for a serious, complex conspiracy charge.” Reaves, 376 So.2d at 138 (quoting Barker, 407 U.S. at 531, 92 S.Ct. 2182).
In addition, the first of the four Barker v. Wingo factors, the length of the delay, is the “triggering mechanism,” and if the length of the delay is not “presumptively prejudicial,” the court need not inquire into the other three Barker factors. See Scott, 04-1142, p. 12, 913 So.2d at 851; State v. Santiago, 03-0693, p. 3 (La.App. 4 Cir. 7/23/03), 853 So.2d 671, 673.
Here, approximately five months elapsed between the filing of the original bill and the reinstitution of charges. Such a delay is not presumptively prejudicial, and thus we need not address the other factors. See State v. Keller, 03-0986 (La.App. 4 Cir. 10/1/03), 859 So.2d 743 (six- and-one-half-month delay between the filing of the initial bill of information and the quashing of the reinstituted bill of information was not presumptively prejudicial); State v. Pham, 97-0459 (La.App. 4 Cir. 3/26/97), 692 So.2d 11 (nine-month delay in a case of cheating at gambling did not warrant the quashing of charges, even though the defendant had to travel from Houston to New Orleans four times for trial); State v. Shanklin, 06-1151 (La.App. 4 Cir. 2/14/07), 953 So.2d 84 (nine month delay is not presumptively prejudicial); State v. DeRouen, 96-0725 (La.App. 4 Cir. 6/26/96), 678 So.2d 39 (fifteen months between institution of prosecution and motion to quash not violative of the statute); cf. and see Love, 00-3347, 847 So.2d 1198 (twenty-two-month delay presumptively prejudicial); State v. Ervin, 08-1078 (La.App. 4 Cir. 4/1/09), 9 So.3d 303 (twenty-five-month delay, even though partially attributable to the devastation wrought by Hurricane Katrina, “arguably” presumptively prejudicial).
^Nevertheless, even considering the remaining Barker factors, we find that the state’s action did not deprive Sanders of the right to a speedy trial. Other than the continuance requested by the state on 16 May 2011, the state did not request another continuance. In fact, after the state reinstituted charges, it was Sanders who asked for a continuance of the 23 June 2011 trial. Further, the reason the state requested the continuance was due the unavailability of the victim, and Louisiana jurisprudence has specifical *627 ly held that the unavailability of a state witness is a legitimate reason for delaying trial/entering nolle prosequi and thus does not violate an accused’s right to a speedy trial. Love, 00-3347, p. 6, 847 So.2d 1198; Batiste, 05-1571, p. 8, 939 So.2d at 1249; Scott, 06-1610, p. 6, 958 So.2d at 729; State v. Shannon, 09-0305, p. 8 (La.App. 4 Cir. 9/9/09), 17 So.3d 1061, 1067.
Sanders did move for a speedy trial twice;[8] however, he did not claim that the state’s action caused him prejudice until this appeal.[9] The record also shows that the state requested a “brief continuance” at the beginning of the 23 June 2011 trial on the grounds that a custodian of records of Labor Ready was unavailable. Sanders claimed that the witness was necessary to show how much he earned the day before the robbery. However, Labor Ready’s employee, Lisa Legeaux, ultimately testified as to the amount Sanders earned on 26 November 2011. Sanders was not therefore disadvantaged by the trial proceeding on 23 June 2011. In his brief, Sanders now alleges that the state’s reinst-itution of charges prejudiced him from locating and presenting supporting witnesses. However, other than the | ipnameless Labor Ready custodian, Sanders did not identify any witnesses he was prevented from calling or locating for trial. Sanders also failed to assert his inability to locate witnesses in either his motion to quash or his motion for new trial. Thus, Sanders has not shown or proven a specific prejudice to his defense. Given these circumstances, we find no violation of Sanders’s constitutional right to a speedy trial.
Sanders also claims the state’s authority to dismiss and reinstitute charges violates his due process, right under the separation of powers doctrine. These arguments were addressed and rejected by both the Louisiana Supreme Court and the Fourth Circuit. King, 10-2638, 60 So.3d 615; Batiste, 05-1571, 939 So.2d 1245;[10] State v. Lee, 11-0892 (La.App. 4 Cir. 1/18/12), 80 So.3d 1292; Hayes, 10-1538, 75 So.3d 8;[11] Brown, 11-0947, 88 So.3d 662.
*628 | u Sanders now argues in his appellate brief that the strain of his continued incarceration and inability to locate witnesses prejudiced him, but fails to present affirmative evidence that he lost witnesses or evidence due to the state’s action. _[i2Although Sanders claims that his witness, the custodian of records of Labor Ready, was unavailable when the state reinstituted proceedings, this did not significantly impair or prejudice Sanders. The alleged unavailable witness was only going to testify as to the authenticity of Labor Ready employment records to show that Sanders earned $63 the day before the robbery. Moreover, another representative of Labor Records, Lisa Legeaux, testified for the defense in that regard. Thus, the unavailability of his witness was *629 immaterial and did not prejudice Sanders.[12] Additionally, the record shows that the state did not use its power to dismiss and reinstituted charges against Sanders for the purpose disadvantaging him at trial because the reason for the dismissal was due to the unavailability of Johnson. Accordingly, it is not evident that the state was flaunting its authority at the expense of Sanders and thus the trial court did not err in denying the motion to quash.

ASSIGNMENT OF ERROR NUMBER 2

In his second assignment of error, Sanders argues that the trial court erred in admitting evidence of other bad acts that were “irrelevant, prejudicial, and inflammatory, including an alleged unadjudi-cated sexual assault that was not proven” and separate from the incident at issue.[13] At the beginning of trial, | iaSanders filed a motion in limine to prevent the state from introducing evidence of his allegedly sexually assaulting a homeless woman. Sanders argued that admitting evidence of the alleged assault violates La. C.E. art. 404, which prohibits the introduction of other crimes or bad acts. Sanders further claimed that the allegation of sexual touching was irrelevant to the incident at issue and that its prejudicial effect outweighs any probative value.
Contrariwise, the state claimed that the evidence of the prior assault was relevant and properly admitted under the res gestae exception as it explained the verbal altercation between Johnson and Sanders that preceded the armed robbery, provided narrative completeness, and was an integral part of the crime.
The trial court, after hearing argument from both the state and Sanders, agreed with the state, finding: “[g]iven the proximity in time to the event at issue, which forms the basis of this prosecution, I will find it res gestae and allow it in.”
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Relevant evidence is generally admissible. La. C.E. art. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. La. C.E. art. 403. Unfair *630 prejudice as used in La. C.E. art. 403 means that “the offered evidence has an ‘undue tendency to suggest decision on an 114improper basis, commonly, though not necessarily, an emotional one.’ ” Author’s Note (3) to La. C.E. art. 403, Handbook on Louisiana Evidence Law, Pugh, Force, Rault & Triche (2009).
A trial court’s ruling as to relevancy will not be disturbed absent a clear abuse of discretion. State v. Bell, 05-0808, p. 12 (La.App. 4 Cir. 12/6/06), 947 So.2d 774, 781; State v. Lewis, 97-2854, p. 20 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004, 1017. A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. State v. Hall, 02-1098, p. 8 (La.App. 4 Cir. 3/19/03), 843 So.2d 488, 496.
Generally, a court may not admit evidence of other crimes to show a defendant is a person of bad character who has acted in conformity with his bad character. La. C.E. art. 404; State v. Prieur, 277 So.2d 126 (La.1973). However, under La. C.E. art. 404 B(l) evidence of other crimes, wrongs, or acts may be introduced when it relates to conduct that “constitutes an integral part of the act or transaction that is the subject of the present proceeding.” [14] The last sentence of |1BLa. C.E. art. 404 B(l) is the codification of the principle of res gestae. State v. Brown, 03-1616, p. 10 (La.App. 4 Cir. 3/31/04), 871 So.2d 1240,1247.[15]
In State v. Taylor, 01-1638 (La.1/14/03), 838 So.2d 729, the Court further explained the admissibility of res gestae and evidence of “other crimes, wrongs, or acts” pursuant to La. C.E. art. 404 B(l).
Res gestae events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the state could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence “to insure that ‘the purpose served by admission of other crimes evidence is not to depict defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.’ ” State v. Colomb, 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076 (quoting State v. Haarala, 398 So.2d 1093, 1098 (La.1981)). *631 The res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. State v. Huizar, 414 So.2d 741, 748 (La.1982); State v. Kimble, 407 So.2d 693, 698 (La.1981). In addition, as this court recently observed, integral act (res gestae) evidence in Louisiana incorporates a rule of narrative completeness without which the state’s case would lose its “narrative momentum and cohesiveness, ‘with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.’ ” Colomb, 747 So.2d at 1076 (quoting Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)). [Emphasis added].
Id. at pp. 10-11, 838 So.2d at 741-742; see also, State v. Brown, 03-1616, p. 11 (La.App. 4 Cir. 3/31/04), 871 So.2d 1240, 1247-48; State v. Odenbaugh, 10-0268, pp. 52-54 (La.12/6/11), 82 So.3d 215, 250-52.
Moreover, the erroneous admission of other crimes evidence is subject to a harmless error analysis. State v. Maise, 00-1158, p. 17 (La.1/15/02), 805 So.2d 1141, 1153; State v. Tyler, 97-0338, p. 14 (La.9/9/98), 723 So.2d 939, 947; State v. Johnson, 94-1379, p. 15 (La.11/27/95), 664 So.2d 94,101.
In State v. Haarala, 398 So.2d 1093 (La.1981), the defendant was charged and convicted of burglary of a hardware store. The Court determined that the references to a possible attempted break-in of the drugstore next door were properly admitted as part of the res gestas. The Haara-la court explained that the beating on the drugstore door prompted the complaint to the police and the subsequent investigation. The Court stated: “[r]eference to that disturbance was necessary to show the immediate context out of which the charged offense arose and to present accurately the state’s case.” Id. at 1097. The Haarala court noted that the state theorized that the defendant took tools from the hardware store and used them to break into the drugstore across the alleyway. Because the police officers had checked the alleyway fifteen minutes earlier and found nothing suspicious, the burglary of the hardware store and the attempted burglary of the drugstore had to take place within a few minutes of each other. Id. See also State v. Smith, 94-1502 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1083 (possession of gun and purse-snatching incident were integral part of act or transaction for which defendant was tried as events were very close in time, and the state could not have Inaccurately or logically presented its case without showing how and why defendant was arrested and cocaine found).
In the present case, a review of the testimony indicates that the alleged sexual assault occurred within minutes and a few yards from where the armed robbery occurred.[16] While, the passage of time alone between the offense and the *632 alleged res gestae is not the sole consideration for deciding if a behavior or remark is part of the res gestae, it is a significant factor. State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074 (noting that a close connexity is between the charged and uncharged conduct is necessary and important to complete the story of the crime by proving its immediate context of happenings near in time and place); State v. Powell, 98-0278 (LaApp. 4 Cir. 11/17/99), 746 So.2d 825 (requiring a close connexity in time and location between the charged offense and the other crimes evidence); State v. Jones, 99-0861 (La.App. 4 Cir. 6/21/00), 769 So.2d 28 (testimony indicated defendant in possession of crack cocaine an hour before defendant was arrested for possession with the intent to distribute was it was admissible as res gestae); State v. Salter, 31,633 (La.App. 2 Cir. 2/24/99), 733 So.2d 58 (evidence of acts committed by defendant thirty minutes before offense was part of res gestae); State v. Kimble, 407 So.2d 693 (La.1981)(an incriminating statement made by an accused to a person near the scene of the offense within a few minutes of the offense has been admissible as part of the res gestae); State v. Washington, 444 So.2d 320 (La.App. 1 Cir.1983) (remarks made by the accused 11stwo hours after the offense and five miles away were considered within the res gestae and admissible, apparently in part because the defendants were still in flight when the remark was made); but see, State v. Gautreaux, 377 So.2d 289 (La.1979) (remarks made some ten to thirty minutes after the crime at another place to a person not involved in the crime were held as not res gestae remarks, but their improper admission into evidence was considered harmless error in light of overwhelming evidence of guilt).
Moreover, as in Haarala, reference to the alleged sexual assault was necessary for the state to show the context out of which the armed robbery arose in order for the state to accurately present its theory of the case. Johnson testified that after he observed Sanders inappropriately touch the homeless woman, he confronted Sanders to prevent further touching which resulted in an argument. Moments after the confrontation, Sanders demanded Johnson pay him the eight dollars he owed. Johnson did not dispute that he owed Sanders eight dollars; Johnson testified that when he pulled out his wallet to give Sanders a $20 bill, Sanders put a box cutter to his throat and took $60.[17] The assault and subsequent argument combined with the armed robbery form “a continuous chain of events” that helped give the jury a complete picture of the incident. Johnson’s testimony regarding the assault was also integral to explaining why Johnson and Sanders, who hours prior to the robbery were getting along fine, escalated to a verbal altercation and robbery with a box cutter. Accordingly, we find the trial court did not abuse its vast discretion in allowing evidence of the prior assault be admitted.

\ ASSIGNMENT OF ERROR NUMBER 3

In his third assignment of error, Sanders argues that his conviction by a non-unanimous jury was unconstitutional.
La. Const, art. I, § 17(A) provides that a case “in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of *633 whom must concur to render a verdict.” Additionally, La.C.Cr.P. art. 782(A) provides in part that “[c]ases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.”
Here, because the Sanders was charged with armed robbery, a non-capital felony punishable by hard labor, the Louisiana law allows ten jurors to reach a guilty verdict. The record shows that prior to trial Sanders filed a motion to declare La.C.Cr.P. art. 782 A unconstitutional because it permits a non-unanimous verdict. The record does not appear to contain a verdict sheet, but the trial transcript reflects that the jury returned a responsive verdict of guilty on the lesser offense of simple robbery, but not the number of jurors who concurred to reach the verdict. However, Sanders’s motion for new trial and post-verdict judgment of acquittal indicates that the verdict count was ten-two. Sanders claims that allowing only ten jurors to concur in his robbery verdict violates his right to due process, and thus La.C.Cr.P. art. 782 is unconstitutional.
However, both the Louisiana Supreme Court and the Fourth Circuit have specifically rejected the argument that a non-unanimous verdict violates constitutional rights. See State v. Bertrand, 08-2215 (La.3/17/09), 6 So.3d 738; State v. Boudreaux, 08-1504 (La.App. 4 Cir. 9/29/10), 48 So.3d 1144; State v. Barbour, 09-1258 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142; State v. Rubens, 10-1114 (La.App. 4 Cir. 11/30/11), 83 So.3d 30, writ denied, 12-0374 (La.5/25/12), 90 So.3d 410.
La.C.Cr.P. art. 782 A, providing for conviction upon concurrence of ten of twelve jurors in cases in which punishment is necessarily confinement at hard labor, is constitutional and does not violate a defendant’s right to due process. Accordingly, there is no merit to this assignment of error.

CONCLUSION

We affirm the conviction and sentence of Sanders.
AFFIRMED.

. The trial court also heard and denied Sanders’ motion to suppress.

. The minute entries, supplemented by the trial court on 26 April 2012, state that the case came for trial on 16 and 17 May 16, 2011. However, both, Sanders and the state indicate that date of trial and the date the state moved for a continuance was 16 May 2011.

. Sanders also waived hearings on any motions filed in the reinstituted case.

. Sanders renewed the motion for speedy trial he filed in case number 502-320 and waived hearings on any additional motions filed in the reinstituted case number 505-938.

. At trial, Johnson occasionally referred to Sanders as "Frank.” As noted above, Harold Sanders is the defendant’s real name. However, at the time Johnson was acquainted with Sanders, Sanders called himself "Frank.”

. Sanders concedes that the armed robbery charge was reinstituted within the time delays established by La.C.Cr.P. art. 572 and La. C.Cr.P. art. 576. He further admits that the June 23, 2011 trial occurred within the two-year time limited provided by La.C.Cr.P. art. 578.

. See fn. 1, supra.

. The state filed a motion for speedy trial on 13 December 2010 in the previous case and renewed the motion in the instant case on 25 May 2011.

. In his brief, Sanders claims that the trial court erred in denying the motion to quash because his statutory rights to a speedy trial had been violated; however, the actual motion to quash never raises this argument. The motion to quash only argues that the state’s dismissal and reinstitution power violates his due process rights and the separation of powers doctrine.

. In Batiste, 05-1571, p. 8; 939 So.2d at 1251, the Court held that the state did not flaunt its authority at the expense of the defendant when it used its power to dismiss and reinstituted charges against him:
Under the specific facts presented by this case, we find the district court abused its discretion in granting defendant’s motion to quash the bill of information. The record indicates the State entered a nolle prosequi because the victim was not present for trial and was unsure whether she wanted to go forward with her testimony. The State did not violate any of the time constraints imposed by statutory law. Finally, defendant's constitutional right to a speedy trial was not violated. Consequently, the court of appeal erred in affirming the judgment of the district court. [Emphasis added].

. In State v. Hayes, 10-1538 (La.App. 4 Cir. 9/1/11), 75 So.3d 8, the state filed a nolle prosequi, dismissing its charges against the defendant and later reinstituted the same charges. The defendant filed a motion to quash arguing that the prosecution's use of its authority to dismiss and reinstitute charges against him violated his right to due process. (See Wardins v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), and as to the separation of powers doctrine, see La.C.Cr.P. art. 17; La. Const, art. II, § 2.) The trial court granted the defendant’s motion to quash. This court reversed, finding it was an abuse of discretion for the trial court to grant a motion *628 to quash on these grounds when the defendant did not show a specific prejudice to his defense from the prosecution’s use of its dismissal-reinstitution authority. Id. at p. 14, 75 So.3d at 17. The Hayes Court reasoned:
The flaunting of the prosecutor's authority to favor the state at the defendant’s expense must be evident.
⅜ ⅜ *
But the flaunting of the prosecutor’s authority is merely a gateway consideration to granting a motion to quash on these grounds. The granting of a motion to quash on the ground of prosecutorial abuse of its authority is dismissal with prejudice.
[[Image here]]
Because of the severe remedy, a trial court may not quash the formal charges and dismiss them with prejudice when the prosecution’s abusive exercise of its authority simply disrupts a trial court’s conduct of the proceedings or challenges the court’s authority to manage its docket, but does not significantly disadvantage the defense at any forthcoming trial. Thus, a finding of the prosecution’s abusively exercising its authority is necessary but not sufficient to the sustaining of a motion to quash.
The defendant must show that the district attorney’s abusive exercise of its power actually violates the defendant’s constitutional right to a fair trial.... Thus, we conclude, a prosecutor’s evident, flagrant, objectionable, and ill-motivated "flaunting” is not in itself specific prejudice to the defense at a forthcoming trial. In order to sustain a motion to quash, the resulting specific prejudice to his right to a fair trial must be shown by the defendant. [Emphasis added].
Id. atpp. 8-10;. 75 So.3d at 14-15.
The Supreme Court has also rejected claims similar to those made here when the defendant has not shown that he has suffered specific prejudice as a result of the state’s dismissal and reinstitution of charges against him. See King, 10-2638, pp. 7-8, 60 So.3d at 619-20 (holding to prevail on a motion to quash on the ground that the prosecution has flaunted its dismissal-reinstitution authority, the defendant must make a showing of specific prejudice to his defense, and finding that the trial court erred in granting the motion where the record showed the state was struggling to puts its case together by summoning the appropriate witnesses, and there was no evidence that the state sought a tactical advantage over the defense); Batiste, 05-1571, p. 8; 939 So.2d at 1251 (finding that the trial court abused its discretion in granting a defendant's motion to quash the bill of information where the defendant made no suggestion that his defense was ever disadvantaged by the delays of the prosecution); Love, 00-3347, p. 21, 847 So.2d at 1213 (holding that the trial court should grant motions to quash when the state dismisses and reinstitutes charges only where the district attorney is exercising that authority in such a way that it significantly disadvantages the defense at any forthcoming trial).
In the present case, Sanders has not made a specific showing that the state's use of its dismissal-reinstitution authority significantly disadvantaged him at trial. Upon review of the motion to quash, Sanders makes no claim to a specific prejudice to his defense at any forthcoming trial. Sanders also did not make any allegations at the hearing on the motion to quash that his defense would be prejudiced. Instead, he merely made the general argument that the state's actions violate his constitutional rights and the separation of powers doctrine. Louisiana courts have found neither claim suffices for the requisite showing of "specific prejudice to his right to a fair trial.” Hayes, 10-1538, p. 10, 75 So.3d at 15; see also King, 10-2638, p. 8, 60 So.3d at 620.

. It is important to note that Sanders acknowledges that the unavailability of the records custodian did not impair his defense. In his brief, he states "Harold Sanders went to trial not knowing if the records (showing how he earned the money that Mr. Johnson claims was taken) could be admitted.”

. In addition to the allegations of sexual assault, Sanders also argues that the trial court erred in allowing Johnson to testify that he, Sanders, was a "mooch” and “a drunk who drank up all the money he earned.” Although Johnson did testify that on the night of the incident, he paid for Sanders' drinks and that Sanders consumed twice as much as he had, Johnson did not use that language described in Sanders’ brief. Moreover, upon review of the transcript, Sanders did not object to Johnson’s testimony in this regard. As such, he waived his right to challenge the admissibility of those statements and cannot raise this objection on appeal. See La. C.E. art. 103 (an objection is needed to preserve the complaint as to the evidence for appellate review); State v. Betgard, 410 So.2d 720, 723 (La.1982) (issues and objections not raised at trial will not be considered on appeal unless an error is alleged that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence); La. C.Cr.P. art. 841(A)("[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence”); State v. Ruiz, 2006-1755, p. 8 (La.4/11/07), 955 So.2d 81, 87 (to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection).

. La. C.E. art. 404 B(l) provides:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

. If evidence is admissible under the res gestae exception, it is not subject to any notice requirements. State v. Walker, 99-2217, p. 6 (La.App. 4 Cir. 10/25/00), 775 So.2d 484, 489. The state must give advance notice of evidence of other crimes that the state plans to introduce only when the evidence is to be used as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.” La. C.E. art. 404 B(l). If the evidence of other crimes is introduced because it was an integral part of the act that is the subject of the case, no advance notice is required. State v. Williams, 03-0987, p. 10 (La.App. 4 Cir. 12/10/03), 863 So.2d 652, 658

. At trial, the state claimed that the passage of time between the assault and the offense, was "at most a minute to three minutes." Sanders did not contradict the state's estimation of time, but instead argued that the there was a break in the link. In his brief, Sanders also does not dispute that the argument and the robbery occurred within a few minutes. However, he emphasizes that the argument between Johnson and him lasted only thirty seconds, after which Johnson fell asleep.

. At trial, Sanders claimed that the disagreement preceding the robbery was over the amount of money Johnson owed him. However, upon review of the record, we find that Johnson intended to pay Sanders the eight dollars he owed, but did not have the proper change to do so. Johnson testified when he attempted to pay Sanders, Sanders threatened him with a box cutter and stole three $20 bills from him.