ROLAND L. BELSOME, Judge.
h The defendant, Anthony Martin, was convicted of manslaughter; two counts of attempted second degree murder; six counts of attempted armed robbery with a firearm; one count of attempted aggravated burglary; and one count of illegal use *936 of weapons by discharging a firearm while committing a crime of violence. Several errors patent and a sentencing error result in this matter being affirmed in part, vacated in part and remanded.

PROCEDURAL HISTORY

In a thirteen count grand jury indictment,[1] the defendant was charged with second degree murder (Count I); illegal use of weapons by discharging a firearm while committing a crime of violence (Count II); aggravated burglary of an inhabited dwelling (Count III); attempted second-degree murder (Counts IV, V, and VI); attempted armed robbery with a firearm (Counts VII, VIII, IX, X, XI, and XII); and possession of a firearm after having been previously convicted of an enumerated felony (Count XIII).[2] He pleaded not guilty at his arraignment.
12Subsequently, the trial court denied his motion to quash the indictment.[3] After a twelve-person jury trial, he was found guilty of the responsive verdicts of manslaughter as to Count I, and attempted aggravated burglary as to Count III. He was found not guilty as to Count V, attempted second degree murder of Victor Garcia. The defendant was found guilty as charged on the remaining nine counts: one count of illegal discharge of a firearm during the commission of a violent crime (Count II), three counts of attempted see-ond degree murder (Counts. IV and VI), and six counts of attempted armed robbery (Counts VII through XII).
The trial court denied the defendant’s motion for new trial[4] and sentenced him to forty years at hard labor for manslaughter Count I; fifteen years at hard labor on Count II; twelve years at hard labor on Count III; fifty years at hard labor on Counts IV and VI; and forty-nine and one-half years at hard labor on Counts VII through XII. All sentences were imposed without the benefit of parole, probation, or suspension of sentence, and ordered to be served consecutively. On the same day, he was adjudicated a second-felony habitual offender as to Count IV (attempted second degree murder) only; the trial court vacated the original sentence imposed on that count and sentenced him to one hundred years at hard | dab or, without the benefit of parole, probation, or suspension of sentence. The trial court denied his motion to reconsider the sentence,[5] and this appeal followed.

FACTS

On August 22, 2007, three men forced their way into a residence located at 4810 Nighthart Street, in New Orleans. At the time of the incident, there were five men and two women at home: Jose Guevara, *937 Julio Benitez-Cruz, Danilo Garcia Pavón,[6] Victor Garcia, Michael Sanchez Ramirez,[7] Fanny Villalta Flores, and Jessica Maldonado. Mr. Ramirez and Mr. Pavón were outside eating when they were accosted by the men at gunpoint, and quickly moved inside to the living room.
Once inside, they were held face-down on the floor at gunpoint, while the other perpetrators gathered the remaining occupants, except Mr. Garcia, into íhe living room and ordered them to lie on the ground as well. When Ms. Flores was ordered to lie face down in the living room, one of the male victims explained to the perpetrators that she could not lie on the ground because she was pregnant. Ms. Flores was then ordered to sit while the perpetrators demanded the victims’ money. Following a brief struggle with one of the gunmen, Mr. Benitez-Cruz was shot in the chest. After hearing the shot, Mr. Guevara jumped on the defendant in an attempt to commandeer his gun. During the struggle, the defendant fired twice, striking Mr. Ramirez in the arm and right side of the chest. Mr. Garcia exited from a room in the rear of the home and was also shot by the defendant.
| .(Ultimately, Mr. Guevara was able to take hold of the gun. When the defendant attempted to flee, Mr. Guevara grabbed him by the shorts, pulling his shorts and tennis shoes off. The police later recovered the defendant’s identification card from the shorts left at the scene.[8] Mr. Pavón, Mr. Guevara, Ms. Flores, and Mr. Ramirez all identified the defendant in a photographic lineup. He was later apprehended in Mississippi, and extradited to New Orleans.

ERRORS PATENT

A review of the record reveals two major errors.
First, the minute entry and transcript from the sentencing are inconsistent. Though the minute entry from sentencing reflects that all of the defendant’s sentences are to be served without benefits, the transcript reflects that the trial court restricted benefits in the multiple offender sentence on Count IV only. The minute entry further reflects that the multiple offender sentence is to run consecutively to the other sentences; however, the transcript is silent. Generally, when there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, the entries should be amended to delete both the restriction of benefits and the consecutive sentence on Count IV, then the amendments should be forwarded to the officer in charge of the institution to which the defendant has been sentenced, as well as to the legal department of the Department of Corrections. See |fiLa.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846 (per curiam).[9]
*938 Next, the trial court failed to expressly impose an additional five year sentence on Counts VII-XII, for using a firearm in connection with an attempted armed robbery, on each of those counts, as required by La. R.S. 14:64.3.[10] The defendant was convicted of six counts of attempted armed robbery with a firearm, and sentenced to forty-nine and one-half years at hard labor on each count, the maximum. In State v. Burton, 09-826, p. 3 (La.App. 4 Cir. 7/14/10), 43 So.3d 1073, 1076, this Court held that in cases where it is unclear whether the trial court imposed a firearm enhancement, the sentence is indeterminate, requiring it to be vacated and the matter remanded for resentencing for clarification of whether the defendant’s sentence includes the additional punishment pursuant to La. R.S. 14:64.3. See also State v. Adams, 10-1140 (La.App. 4 Cir. 6/1/11), 68 So.3d 1165; and State v. Carter, 13-74, p. 5 (La.App. 4 Cir. 12/11/13), 131 So.3d 153, 158. Thus, the defendant’s sentences in Counts VII-XII are vacated and remanded for resentencing.

¡«DISCUSSION

On appeal, the defendant assigns four errors in reference to three issues: 1) the motion to quash; 2) the habitual offender plea; and 3) the sentencing.[11] The defendant argues that the trial court erred in denying his motion to quash, which was based on the allegation that the State abused its prosecutorial discretion by improperly entering a nolle prosequi as to his first indictment, on the morning his second trial[12] was set to begin, and then reinsti-tuting prosecution the following day.
In support of his argument that the trial court erred in denying his motion to quash, the defendant contends that: 1) the State abused its prosecutorial authority entering a nolle prosequi in order to circumvent the authority* of the trial court; 2) the State violated the defendant’s due process rights by obtaining a procedural advantage not available to him; 3) the State violated the separation of powers clause; and 4) the State’s misuse of its powers prejudiced the defendant.
Generally, a trial court’s ruling on a motion to quash should not be disturbed absent a clear abuse of discretion. State v. Sanders, 12-409, pp. 4-5 (La.App. 4 Cir. 11/14/12), 104 So.3d 619, 624. Louisiana courts understand that the determination of motions to quash in which the district attorney entered a nolle prosequi and later reinstituted charges should be decided on the basis of the facts and circumstances of the individual case. State v. Love, 00-3347, p. 14 (La.5/23/03), 847 So.2d 1198, 1209.
The defendant argues that the dismissal and reinstitution of prosecution circumvented the authority of the trial *939 court to the defendant’s disadvantage. 17However, the Louisiana Supreme Court and this Court have recognized the State’s authority to enter a nolle prosequi and reinstitute the same charge. State v. Bias, 06-1153, p. 2 (La.App. 4 Cir. 12/20/06), 947 So.2d 797, 799; Love, 00-3347 at pp. 12-13, 847 So.2d at 1208-1209. See also La. C.CrJP. art. 691; La.C.Cr.P. art. 693. Even “a prosecutor’s evident, flagrant, objectionable, and ill-motived ‘flaunting’ is not in itself specific prejudice to the defense at a forthcoming trial.” State v. Hayes, 10-1538, pp. 9-10 (La.App. 4 Cir. 9/1/11), 75 So.3d 8, 15, writ denied, 11-2144 (La.3/2/12), 83 So.3d 1043. The jurisprudence clearly rejects the notion that the State’s action alone would have supported the granting of a motion to quash under the circumstances of the instant case. “In order to sustain a motion to quash [based on the prosecutor’s abusive exercise of its power to nolle prosequi and reinstitute], the resulting specific prejudice to his right to a fair trial must be shown by the defendant.” Id.
Further, the due process and separation of powers arguments raised by the defendant have consistently been rejected by this Court. Hayes, 10-1538 at p. 3, 75 So.3d at 11-12 (where this Court rejected the defendant’s due process and related separation of powers claim, in which he primarily argued the holding in Wardius v. Oregan, 412 U.S. 470, 474, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973)); State v. Luther, 11-1003, pp. 7-8 (La.App. 4 Cir. 5/9/12), 91 So.3d 560, 563 (where this Court, citing to Hayes, supra, again rejected due process and separation of powers arguments made by the defendant); and State v. Brown, 11-947, p. 3, n. 4 (La.App. 4 Cir. 3/7/12), 88 So.3d 662, 664 (noting that “[b]oth the Louisiana Supreme Court and this court have rejected the separation of powers and due process claims”).
^Nevertheless, the jurisprudence has recognized that the State’s dismissal-reinstitution authority may be overborne under the circumstances of any given case by proof either that the defendant’s right to a fair or speedy trial was violated. State v. King, 10-2638 (La.5/6/11), 60 So.3d 615. A defendant challenging the State’s dismissal and reinstitution of charges has the burden of showing a violation of his or her right to a fair trial or constitutional right to speedy trial. King, 10-2638 at pp. 7-8, 60 So.3d at 619; State v. Scott, 04-1142, pp. 11-12 (La.App. 4 Cir. 7/27/05), 913 So.2d 843, 850-51.
This brings us to the defendant’s final argument that he was prejudiced by the prosecutor’s actions. To demonstrate prejudice, he argues three things: 1) the State included additional charges in the second indictment; 2) he was forced to go to trial with a jury different from the one originally selected; and 3) his right to a speedy trial was violated.
First, the defendant claims he was prejudiced because he was forced to stand trial for six additional charges he had not faced in the first indictment. However, all thirteen offenses with which the defendant was charged in the instant case were well within the time limits allotted for prosecution under La.C.Cr.P art. 572(A)(1).[13] The State’s case was based on facts establishing that all of the offenses occurred within a very brief period of time in front of and inside of one residence. While some of the elements of the nine newly charged offenses were different from those for the second degree murder and attempted second degree murder charges the defendant originally faced, he has articulated no spe *940 cific prejudice to his ability to have presented a defense as to those nine new offenses.
l9The defendant submits that the additional offenses were only included in the indictment to portray him in a bad light. However, evidence of the defendant’s possession of and use of a gun, his armed forcible entry into the residence, and the alleged attempted armed robberies with a firearm, would have been admissible at the first trial as either relevant evidence or res gestae /integral act evidence pursuant to La. C.E. art. 404(B)(1). Moreover, the State dropped three charges for attempted second degree murder that were included in the first amended indictment, which were more serious in nature than the six additional charges included here.
Second, the defendant contends that due to the State’s dismissal of the first amended indictment, he was forced to go to trial with a different jury. He represents that the last juror selected for that August 2011 trial was challenged for cause by the State, but the challenge was denied and the State was forced to go to trial with a juror it deemed undesirable. Thus, he maintains that the likelihood of a favorable outcome was greater with that jury. However, such conjecture falls short of the required showing of actual prejudice to the defendant’s due process right to a fair trial.[14]
Finally, the defendant argues that he was prejudiced by having his constitutional right — not his statutory right — to a speedy trial violated by the State’s actions in entering the nolle prosequi. The right to a speedy trial is guaranteed by both the Sixth Amendment to the U.S. Constitution and La. Const, art. 1, § 16.
|10In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court set out the following four factors to determine whether a defendant’s right to a speedy trial has been violated: (1) the length of the delay; (2) the reason(s) for the delay; (3) the defendant’s assertion of his right to a speedy trial; and, (4) the prejudice to the defendant. Wingo, 407 U.S. at 530, 92 S.Ct. at 2192; State v. Mathews, 13-525, p. 2 (La.11/15/13), 129 So.3d 1217, 1218.
The Court in Barker held that the length of the delay was to some extent a triggering mechanism and that until the delay was presumptively prejudicial, there was no need to inquire into the other factors. Barker, 407 U.S. at 530, 92 S.Ct. at 2192; Mathews, supra. The Court further stated that the length of the delay that would provoke such an inquiry was dependent upon the particular circumstances of the case. Barker, 407 U.S. at 530-31, 92 S.Ct. at 2192. Also, the reason for the delay is closely related to the length of the delay, and different weights should be given to different reasons. Barker, 407 U.S. at 531, 92 S.Ct. at 2192. The Court noted that a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government; a more neutral reason such as negligence or overcrowded courts should be weighted less heavily; and what the Court characterized as a “valid reason,” such as a missing witness, should serve to justify an appropriate delay. Id.
*941 As to the defendant’s assertion of his right to a speedy trial, the Court in Barker stated that the assertion of the right was entitled to strong evidentiary weight in determining whether the defendant was deprived of his right, with the |1Tcourt emphasizing that the “failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.” Barker, 407 U.S. at 531-32, 92 S.Ct. at 2192-93.
In the instant case, the delay to be considered for purposes of the first Barker factor is the delay between the defendant’s arrest on November 1, 2007, and the day he filed his motion to quash, October 18, 2011, in the reinstituted prosecution in the instant case. This was a period of almost four years; however, this was a multi-count indictment involving serious and complex charges. See State v. Reaves, 376 So.2d 136, 138 (La.1979)(quoting Barker, supra)(“ ‘the delay tolerable for the simplest street crime is considerably less than for a serious complex conspiracy charge’ ”).
In addressing the second Barker factor, the reason for the delay, the defendant maintains that there were approximately two defense continuances, three joint continuances, six State continuances, and numerous court cancellations. He contends that these delays do not justify the amount of time it took to bring him to trial. However, the defendant fails to consider that much of the delay in bringing him to trial is attributable to two mistrials, one in the first case and one in the instant case, as well as dismissal and reinstitution of prosecution, due to the absence of a key witness who was out of the country.[15]
The unavailability of a state witness is a legitimate reason for delaying trial or entering a nolle prosequi, and thus such delay/nolle prosequi does not violate an accused’s right to a speedy trial. Sanders, 12-409 at p. 9, 104 So.3d at 626-27 (citing Love, 00-3347 at p. 6, 847 So.2d at 1204; State v. Batiste, 05-1571, p. 8 (La.10/17/06), 939 So.2d 1245, 1249; State v. Scott, 06-1610, p. 6, (La.App. 4 Cir. 4/25/07), 958 So.2d 725, 729; State v. Shannon, 2009-0305, p. 8 (La.App. 4 Cir. 9/9/09), 17 So.3d 1061, 1067). Moreover, the record does not indicate that the government deliberately delayed the trial in an attempt to hamper the defense.
As to the third Barker factor, the defendant asserted his constitutional right to a speedy trial for the first time in his motion to quash the instant indictment, filed nearly four years after he was arrested.
The final Barker factor, prejudice to the defendant, should be considered in light of the interests in which the speedy trial right was designed to protect: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532, 92 S.Ct. at 2193. “Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.” Id.
The defendant focuses on the issue of whether the delay impaired or prejudiced the defense in the instant case. He argues that the passage of four years impaired the memory of State witnesses Mr. Gue *942 vara and Ms. Flores. To demonstrate his point, he cites to discrepancies in Mr. Guevara’s testimony. In particular, he asserts that at a motion hearing in the instant case, Mr. Guevara testified that the defendant was not the gunman who shot the homicide victim. However, during the March 2011 trial that ended in a mistrial, he was not sure whether the defendant shot the homicide victim.
| ^However, the record does not reflect any inconsistent testimony. Mr. Guevara’s testimony at the instant trial was essentially the same testimony he gave at the February motion hearing. Moreover, the pertinent transcript from the March 81, 2011, mistrial is not contained in the record. Thus, there is no evidence of Mr. Guevara’s memory impairment.
The defendant also argues that Ms. Flores’ version of the events changed. In particular, she initially told an FBI agent shortly after the crimes that she had gone into her bedroom to await her husband and that when he did not come she left the room, whereupon she saw one of the perpetrators. She later testified at trial that she was in her room when one of the perpetrators entered her bedroom and forced her to the living room. The agent, Juan Bacerra, testified at trial for the defense as an impeachment witness.
However, evidence of these inconsistent accounts actually benefitted the defendant. He used the discrepancy between what was in retired FBI Agent Bacerra’s report and Ms. Flores’ testimony at the August 2012 trial in an attempt to discredit her entire testimony. Thus, he failed to prove any prejudice. Although these witnesses may have had difficulty recalling specific details of the incident, they were consistent in their identifications of the defendant.
Considering the circumstances of this case in light of the Barker factors, we cannot conclude that there was a violation of the defendant’s constitutional right to a speedy trial. Moreover, the record does not support the argument that the defendant was prejudiced by the dismissal and subsequent reinstitution of prosecution in the instant case. Under these circumstances, we do not find that the trial court abused its discretion in denying the defendant’s motion to quash the bill of information in this case.
| uIn this next assignment of error, the defendant argues that his habitual offender plea was not valid due to the trial court’s failure to advise him of his rights or enter into a plea colloquy with him before accepting the plea. La. R.S. 15:529.1(D)(l)(a) states that upon the district attorney filing a habitual offender bill of information the trial court shall inform the defendant of the allegation contained in the information and of his right to be tried as to the truth thereof, and shall require the defendant to say whether the allegations are true. In State v. Johnson, 432 So.2d 815, 817 (La.1983), the Louisiana Supreme Court found that La. R.S. 15:529.1(D) “implicitly provides that the defendant should be advised, by the court, of his statutory right to remain silent.” The requirements of R.S. 15:529.1(D)(l)(a) that the court inform a defendant of the allegations in a habitual offender bill of information, and of his right “to be tried as to the truth thereof according to law,” should not serve as technical traps for an unwary but otherwise conscientious judge.
While the record reflects that the trial court advised the defendant’s counsel, in his presence, of his right to a multiple offender hearing, it did not address the defendant directly or discuss his right to remain silent. For the defendant to receive an enhanced penalty under La. R.S. 15:529.1, the State must prove prior felony *943 convictions and then prove the defendant is the same person who committed the prior felonies. State v. Blackwell, 377 So.2d 110 (La.1979). Both the identity and the prior conviction alleged must be proven beyond a reasonable doubt. La. R.S. 15:529.1(D)(l)(b). Various methods of proof establishing identity have been recognized as sufficient to sustain the state’s burden of proof, including testimony of witnesses, expert opinion as to fingerprints, and photographs contained in duly authenticated records. State v. Brown, 514 So.2d 99, 106 (La.1987); State v. Jones, 408 So.2d 1285, 1294 (La.1982); State v. Curtis, 338 So.2d 662, 664 (La.1976).
Even though the defendant, through his counsel, admitted to his multiple offender status, the State, nevertheless, submitted the certification packet for record purposes during the hearing. After the conclusion of the entire hearing,[16] the State admitted the certification packet into evidence.
The District Attorney’s Office screening action forms in the instant prosecution show that the defendant, Anthony Martin, was a black male, date of birth, July 14, 1980, residing at 6684 Chef Menteur Highway, New Orleans, Louisiana. Capias issued in the instant case reflect this same information. The documents the State submitted at the habitual offender hearing and later filed in the record reflect that on March 27, 2003, Anthony Martin, a black male, date of birth July 14, 1980, residing at 6684 Chef Menteur Highway, New Orleans, Louisiana, pleaded guilty to possession of cocaine in Section “G” of Orleans Parish Criminal District Court, as charged in the habitual offender bill of information filed in the instant case. The documents also reflect that he was given probation for that offense. The defendant further confirmed his felony conviction and probationary sentence during his trial testimony. As mandated by the Louisiana Supreme Court, the trial court could properly take those admissions into account. State v. Brown, 11-1656, pp. 2-3 (La.2/10/12), 82 So.3d 1232, 1234. Given these facts, we find the State proved the defendant’s multiple offender status beyond a reasonable doubt despite the trial court’s harmless error.
11fiIn the two remaining assignments of error, the defendant complains that his sentences were excessive, both as to the length of the sentences and as to the order that they be served consecutively. The court sentenced the defendant to the maximum sentence on all counts, except Counts II and III. While the defendant does not argue that any one particular sentence is excessive, he does argue that the five-hundred and fourteen-year sentence is unconstitutionally excessive. He also argues that the trial court failed to articulate the “statutorily required reasons for imposing the maximum sentences.” Thus, we limit our review of individual sentences to the maximum sentences only.
La. Const, art. I, § 20 explicitly prohibits excessive sentences. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Every, 09-0721, p. 7 (La.App. 4 Cir. 3/24/10), 35 So.3d 410, 417. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. State v. Cassimere, 09-1075, p. 5 (La.App. 4 Cir. 3/17/10), 34 So.3d 954, 958. A sen *944 tence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Ambeau, 08-1191, p. 9 (La.App. 4 Cir. 2/11/09), 6 So.3d 215, 221. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Vargas-Alcerreca, 12-1070, p. 25 (La.App. 4 Cir. 10/2/13), 126 So.3d 569, 583 (quoting State v. Galindo, 06-1090, pp. 15-16 (La.App. 4 Cir. 10/3/07), 968 So.2d 1102, 1113).
117Generally, when reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1 and whether the sentence is warranted under the facts established by the record. State v. Wiltz, 08-1441, p. 10 (La.App. 4 Cir. 12/16/09), 28 So.3d 554, 561. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious offenders. State v. Bell, 09-0588, p. 4 (La.App. 4 Cir. 10/14/09), 23 So.3d 981, 984.
However, even where there has not been full compliance with La. C.Cr.P. art. 894.1, resentencing is unnecessary where the record shows an adequate factual basis for the sentence imposed. State v. Stukes, 08-1217, p. 25 (La.App. 4 Cir. 9/9/09), 19 So.3d 1233, 1250 (citing State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819). Further, La.C.Cr.P. art. 881.4(D) expressly states that an “appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.”
The defendant was sentenced to the maximum sentence of forty years at hard labor on Count I, for manslaughter; the maximum sentence of forty-nine and one-half years at hard labor on Counts VII through XII, for attempted armed robbery with a firearm; the maximum sentence of fifty years on Count VI, for attempted second degree murder; and the maximum sentence of one hundred years at hard labor as a second-felony habitual offender on Count IV, for attempted second degree murder. He was sentenced to fifteen years on Count II for the illegal use of weapons by discharging a firearm while committing a crime of |lsviolence, five years less than maximum sentence of twenty years; and twelve years on Count III for attempted aggravated burglary of an inhabited dwelling, which was three years less than the maximum. Though the trial court did not comment on his reasons for the sentences; he did comment on the serious nature of the crime when he sentenced the defendant as a multiple offender on Count IV.[17]
The evidence established that the defendant was one of a group of three men all armed with a handgun that targeted a dwelling, which housed a group of Hispanic workers. The potential for death or great bodily injury in the perpetration of this crime was great. In fact, one of the victims suffered a fatality, and two others were injured from gunshot wounds. That the shootings may have occurred when one or more of the victims resisted the defendant and his accomplices in self-defense is *945 not a mitigating factor in the shootings, as he seems to suggest. Ms. Flores, was in her ninth month of pregnancy at the time she and the other victims were terrorized by the defendant and his accomplices. The record further reflects that the defendant was thirty-two years old at the time of sentencing and had one prior felony conyiction. At sentencing, Mr. Ramirez gave a victim impact statement regarding the terror he felt and the injuries he suffered, requiring fifteen surgeries; the defendant expressed no remorse for his crimes.
This court has previously affirmed maximum forty-year sentences for manslaughter as not unconstitutionally excessive. See State v. Peters, 12-1641 (La.App. 4 Cir. 8/21/13), 123 So.3d 307, writ denied, 13-2259 (La.3/14/14), 134 So.3d 1195 (the defendant was originally charged with second degree murder relative to 119a drive-by shooting; however, the State amended the charges to manslaughter); State v. Colbert, 07-947 (La.App. 4 Cir. 7/23/08), 990 So.2d 76 (the defendant was charged with second degree murder and convicted of manslaughter); State v. Allen, 06-1434 (La.App. 4 Cir. 3/7/07), 954 So.2d 779; State v. Bell, 02-2349 (La.App. 4 Cir. 8/6/03), 854 So.2d 429.
Additionally, this court has found maximum fifty-year sentences for attempted second degree murder not excessive. See State v. Nix, 07-1431 (La.App. 4 Cir. 6/18/08), 987 So.2d 855 (the defendant’s consecutive maximum sentences of fifty years for attempted second degree murder involving an unprovoked stabbing of the victim and forty years for a manslaughter conviction by stabbing were not excessive, given the defendant’s criminal history and fact that he committed a very similar stabbing resulting in a death only a few weeks earlier); State v. Lewis, 03-1234 (La.App. 4 Cir. 6/2/04), 876 So.2d 912 (two concurrent fifty-year sentences for attempted second degree murders committed during separate armed and attempted armed robberies not excessive where the defendant was remorseless and each shooting victim endured enormous pain and suffering during multiple surgeries for their wounds, with one suffering from permanent physical problems as a result); State v. Davis, 93-663 (La.App. 4 Cir. 2/25/94), 633 So.2d 822 (two consecutive fifty-year sentences for attempted second degree murder and consecutive sentence of forty-nine and one-half years for attempted armed robbery not excessive considering injuries and complications sustained by one shooting victim and the defendant’s record of thirty three arrests, including one resulting in prior conviction for armed robbery).
This court has also found sentences of forty-nine and one-half years for attempted armed robbery not excessive. See State v. Robinson, 11-0066 (La.App. 204 Cir. 12/7/11), 81 So.3d 90; State v. Augustine, 482 So.2d 150 (La.App. 4th Cir.1986). Louisiana courts have further affirmed one-hundred year sentences for attempted second degree murder for second offenders. State v. Hills, 98-507, pp. 5-7 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217-18 (where the trial court considered the gravity of the crime and cruelty to the victim); State v. Hall, 606 So.2d 972 (La.App. 3rd Cir.1992); State v. Williams, 435 So.2d 1047 (La.App. 5th Cir.1983). In Hall, the defendant had an extensive violent history. The defendant’s disregard for the safety of the victim and others also led the sentencing judge to conclude that the sentences did not constitute cruel and unusual punishment.
While the imposition of the maximum sentences was harsh, it cannot be said that the sentences made no measurable contribution to acceptable goals of punishment, were nothing more than the purposeless *946 imposition of pain and suffering, and were grossly out of proportion to the severity of the crime. Here, the sentences accomplished the legitimate purpose of protecting society from further action by the defendant. Since the record supports the individual sentences imposed by the trial court, we do not find that the trial court abused its discretion as it relates to the length of the sentences.
Last, the defendant argues that his sentences are excessive because they are to be served consecutively. La.C.Cr.P. art. 883 provides in part: “If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.” | ⅞1 However, when consecutive sentences are imposed for crimes arising out of the same act, the trial court must articulate particular justification for such sentences beyond a mere articulation of the standard sentencing guidelines set forth in La. C.Cr.P. art. 894.1. State v. Marcelin, 12-645, p. 19 (La.App. 4 Cir. 5/22/13), 116 So.3d 928, 939, writ denied, 13-1485 (La.1/10/14), 130 So.3d 321, cert. denied, - U.S. -, 134 S.Ct. 1951, 188 L.Ed.2d 971 (2014); State v. Williams, 11-414, p. 29 (La.App. 4 Cir. 2/29/12), 85 So.3d 759, 777, writ denied, 12-0708 (La.9/21/12), 98 So.3d 326.
Here, the eleven counts upon which the defendant was convicted arose out of the same occurrence; thus, the trial court had to set forth reasons for ordering the sentences to be served consecutively. The trial court did not provide articulated reasons for running the eleven sentences consecutively, totaling five hundred and fourteen years, instead of rently. The only express reasons the trial court gave when sentencing the defendant were directed to the one-hundred-year sentence it imposed on him as a second-felony habitual offender on one count of attempted second degree murder. Accordingly, the portion of the sentence requiring that all of the sentences be served consecutively instead of concurrently is vacated and the case is remanded for resentencing, as to the concurrent or consecutive nature of the sentences, in accordance with the law.

CONCLUSION

The defendant’s convictions and multiple offender adjudication are affirmed. The length of the defendant’s sentences in Counts I through IV and VI are affirmed. However, the sentences are vacated as it relates to them consecutive nature. The defendant’s sentences in Counts VII and XII for attempted armed robbery are vacated and remanded for resentencing to reflect the five-year firearm penalty.
| ^AFFIRMED IN PART; VACATED IN PART AND REMANDED.

. This was the defendant’s second indictment.

. The defendant was not tried on Count XIII.

. In the first indictment, the trial court denied the defendant’s motions to suppress the evidence, statement, and identification. After a mistrial, the State entered a nolle prosequi just before the jury was sworn in for the second trial, because the trial court denied a continuance and one of its key witnesses was out of town. After the second indictment was filed, a mistrial was again granted. The defendant later proceeded to the instant trial. The nolle prosequi entered in the first indictment was the basis for the motion to quash filed in the instant case.

. The record establishes that the defendant waived the mandatory delays between a ruling on a new trial motion and sentencing. See La.C.Cr.P. art. 873; and State v. Robichaux, 00-1234, p. 7 (La.App. 4 Cir. 3/14/01), 788 So.2d 458, 465.

. In his brief, the defendant incorrectly asserts that the record lacks documentation of a ruling on the motion to reconsider sentence. The record reflects that the trial court made a ruling on December 12, 2012.

. The bill of information refers to this witness as "Danilo Garcia.” For consistency, we will reference this witness using the name "Danilo Garcia Pavón,” as denoted in the transcript.

. The bill of information refers to this witness as "Michell Sanchez.” For consistency, we will reference this witness using the name "Michael Sanchez Ramirez,” as denoted in the transcript.

. While there were no drugs recovered from the home and the witnesses all negated the presence of drugs in the home, the defendant testified that he was present in the home to purchase drugs when two armed men came into the home and began fighting with a person, whom he had only known as “Panther.”

.The trial court was required to restrict benefits on all of the sentences except those on Counts I and III. Since the minute entry contains illegal sentences on these counts, it must be corrected. Though the trial court failed to articulate any restrictions on the remaining sentences, such restrictions are *938 self-activating and are deemed to be contained in the respective sentences with no further action required. La. R.S. 15:301.1(A); State v. Williams, 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799; and State v. Hall, 02-1098 (La.App. 4 Cir. 3/19/03), 843 So.2d 488.

.La. R.S. 14:64.3(B) states that when the dangerous weapon used in the commission of the crime of attempted armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence, which sentence shall be consecutively to the sentence imposed under the provisions of La. R.S. 14:27 and 14:64.

. The defendant's assignments of error are as follows: 1) the trial court erred in denying the motion to quash; 2) the sentence imposed was excessive; 2) the trial court erred in imposing consecutive sentences; and 4) the habitual offender plea is invalid.

. The first trial resulted in a mistrial.

. Under La.C.Cr.P art. 572(A)(1), the State had six years to institute prosecution on the instant offenses, and it instituted the indictment in less than four years.

. The defendant also asserts that once the jurors had been selected they had a right to sit on that jury and the State “circumvented” the jurors’ rights by entering the nolle prose-qui. However, he fails to cite to any authority or otherwise show that any presumed rights of an unsworn juror overrides the constitutional and statutory authority of the district attorney. Further, this issue does not in any way implicate the defendant's right to a fair trial on the reinstituted charges.

. In April of 2011, the State informed Mr. Guevara of the August 2011 trial date. A few days before trial was set to start, an instanter subpoena was left at his residence. The State learned that he was out of town on the first day of trial and telephoned him. He confirmed that he was in El Salvador and had forgotten about the trial date. When the trial court refused to declare him unavailable, to use his prior testimony, or grant a recess, the State dismissed the case.

. The defendant was adjudicated a multiple offender, sentenced, and his counsel allowed tó withdraw.

. In particular, the trial court stated: "Now, you may want to know how harsh that is, but a person’s house is their sanctuary. You came busting in somebody's house, blazing guns like in the wild west [sic] just can’t be tolerated in 2012.”