EDWIN A. LOMBARD, Judge.
liThe defendant Bryan K, Hill appeals his conviction for .attempted possession with intent to distribute cocaine and attempted possession of marijuana. After review of the record in light of the applicable law and arguments of the parties, including the defendant’s pro se brief, we affirm the defendant’s convictions and sentences, remanding the matter back to the trial court with instructions to amend the pertinent docket master and minute entry from the sentencing judgment of the sentencing hearing to conform with the related transcript. We-furth'er direct the Clerk of Court for Criminal Court to transmit the corrected documents to the officer in charge of the institution to which the defendant has been sentenced and to the Louisiana Department of Corrections Legal Department.

Relevant Procedural History

The defendant was charged by bill of information on May 29, 2009, with one count of possession with intent to distribute cocaine and one count of possession with intent to distribute marijuana. After a motion, hearing on December 10, 2009, the trial court found probable cause and denied defendant’s motion to suppress evidence. After a Prieur[1] hearing on November 4, 2011, the | atrial court granted the State’s motion in part, allowing the State to introduce evidence of the defendant’s prior narcotics convictions. On April 10, 2012, after a jury trial that began on April 4, thé defendant was found guilty of attempted possession with intent to distribute cocaine and attempted possession of marijuana-first offense. On May 25, 2012, the defendant was sentenced to ten years at hard labor on the attempted possession with intent to distribute cocaine conviction and ninety days in Orleans Parish Prison on the attempted possession of marijuana-first offense conviction. The defendant was subsequently adjudicated a multiple offender on the possession with intent to distribute cocaine, charge; his original sentence on that conviction was vacated and the defendant was resen-tenced to twenty-five years at hard labor.
Both the defendant and the State filed motions to reconsider sentence; the trial court denied both motions. On April 6, 2015, the defendant filed an application for post-conviction relief seeking an out of time appeal. The application was granted on July 6, 2015, and this appeal follows;

*1265
Relevant Facts

The following facts were adduced at trial. Police officers in the New- Orleans Police Department (NOPD) Second District Narcotics Unit established a surveillance under the direction of Officer Louis Faust in the area of Allen Street and North Galvez on April 28, 2009, which resulted in'the defendant’s arrest.
Officer Deyin: Jones related that, under the direction of Officer Faust, he proceeded to the 2100 block of Allen Street in plain clothes and in an unmarked police car to look for an African American male wearing a black cap and blacky tee shirt who was allegedly selling narcotics at the intersection. He saw an individual (subsequently identified as the defendant) who fit the description holding aJjPopeye’s bag. Officer Jones then observed a man wearing a white, shirt walked up to the defendant, speak briefly, and , give him money After receiving the money, the defendant opened the Popeye’s bag, retrieved an object from the bag, and gaye it to the man who then walked down Galvez Street towards A.P. Tureaud Street. Officer Jones, having observed what appeared to be a narcotics transaction,, called Officer Faust and advised him to stop the man in the white shirt as he left the area because he believed the man had just purchased narcotics.
-Officer Jones continued to watch the defendant standing at. the intersection and, after about ten minutes, observed him walk towards the 2000 block of Allen Street (with the Popeye’s bag still in his hand), stop at the abandoned blue house two or three houses from the corner, and disappear from yiew around the left side of the house. • When he reappeared a few minutes later, the defendant no longer held the Popeye’s bag. He walked back to the corner of Allen and North Galvez and crossed the street to speak with two women. Officer Jones relayed this information to Officer Faüst and watched as a back-up team arrived and detained the defendant, then joined his fellow officers at the abandoned house where^the canine unit found the Popeye’s bag. and narcotics.
Officer Faust testified, confirming Officer Jones testimony pertaining to the details of the surveillance. Officer Faust related that the defendant was detained and. advised that he was under investigation for narcotics activities after probable cause existed to support a stop. Officer Faust’s team then relocated to the abandoned building and called in a canine unit. After the canine alerted on the left side of the house, the officers found a white and red Popeye’s paper bag containing three baggies of marijuana and several pieces of crack cocaine underneath the hhouse.[2] In a search incident to his arrest, the defendant was found to have one hundred thirty dollars on him (five twenty dollar bills, two ten dollar- bills, one five dollar bill and five one dollar bills). The defendant acknowledged that he resided-at 2125 Allen Street.
Sergeant Robert Dassel testified that on August. 19, 1998, he was assigned to the Fifth District Task Force -and, along with Officers Warren Walker and Earl Razor, participated in the investigation and arrest of‘the defendant for narcotics activity in the area of Allen and North Dorgenois Streets. Prior to arresting the defendant, the' officers were on patrol and- observed the defendant riding a bicycle. The defendant made a hand gesture towards a stopped vehicle, approached the driver’s *1266 side of the vehicle, and engaged in a hand-to-hand transaction. As the officers approached, the defendant began to pedal off. The officers stopped the defendant and conducted a pat down, finding a rock of cocaine in the defendant’s left pants pocket and seventy-five dollars in his right pants pocket. The defendant gave his address as 2125 Allen Street.
Officer Brian Elsensohn, a member of the NOPD Special Operations Division, testified that on February 27, 1999, he investigated and arrested the defendant at the intersection of New Orleans and Ro-cheblave Streets. At approximately 8 p.m. that evening, Officer Elsensohn was on patrol with Officer Todd Morel and observed the defendant riding a bicycle on Rocheblave Street. When the defendant looked over his right shoulder and saw the police vehicle, he looked nervous and pedaled faster, arousing the officers’ ■ suspicions. The |defendant kept looking over his shoulder at the police vehicle and, making a left turn onto New Orleans Street, nearly struck a vehicle stopped at a stop sign. The defendant lost control of the bike, jumped off and walked away, leaving it in the street. Becoming extremely suspicious, the officers followed the defendant and saw him discard a clear plastic bag. Believing that the bag contained- some form of narcotics or contraband, the -officers stopped their vehicle and-Officer Morel detained the defendant while Officer Elsensohn retrieved the ■ bag which contained three marijuana cigars. The defendant was arrested for possession of marijuana. The defendant, gave his address as 2125 Allen Street.
Officer Ray Jones testified that at approximately 8:50 a.m. on May 24, 2003, he was on patrol with Officers Tony Mitchell and Frank Thompson and observed, a Mitsubishi being driven recklessly. The officers stopped the vehicle and the defendant got out, turned his back to the Officer Jones, and placed something in his mouth. Officer Jones grabbed the defendant and ordered him to spit out whatever he put in his mouth. The defendant complied and Officer Jones saw crack cocaine come out the defendant’s mouth. A search of the defendant revealed $698.00 in cash and he stated he resided at 2125 Allen Street.
Lieutenant Bryan Lampard testified that in March 2007, he worked with Agent Scott Cunningham of the federal Drug Enforcement Agency (DEA) as part of a special narcotics and violent crimes task force. On March 29th, driving on Allen Street, they observed a brown Chevy Malibu parked in the 2100 block of Allen Street with the passenger side door opened onto the street. To avoid striking the door, the officers had to slowly pass and, as they approached, they observed the defendant in the passenger seat. The defendant looked up, saw the marked police | ¿vehicle, and became visibly nervous. He reached down,' grabbed something from under the seat, turned his back to the officers, and stuffed something in his waistband. Believing that the defendant could be armed, the officers ' exited the police vehicle and ordered him to show them his hands. The defendant did not initially comply; keeping both hands in his waistband. The officers again ordered the defendant to move his hands and the defendant put his hands over his head. The officers conducted a pat down search of the defendant and felt a large rock of crack cocaine in the defendant’s waistband: The defendant was handcuffed, and thé" officers retrieved the crack cocaine, which weighed 11.44 grams. The defendant was arrested and advised of his Miranda rights. The defendant told the officers he was selling narcotics to pay for repairing his house and asked them not to take him to jail because’ he had two prior convictions for possession of crack *1267 cocaine and could not afford a third conviction.
Sergeant Octavio Baldassaro and his partner, Officer Eric Gillard, were on proactive patrol on December 29, 2008. They were driving on Allen Street when they observed the defendant and another man in front of 2125 Allen Street. The defendant was squatting down, manipulating an object with both hands. The other man was standing. As the officers approached the defendant, they saw that the object was a brown paper wrapper. Sergeant Baldassaro stated that such wrappers are often used to smoke marijuana. When the defendant saw the police, officers, he started walking towards 2125 Allen Street. As the defendant was walking, he raised his left hand and put something in his mouth. The officers decided to investigate. Sergeant Baldassaro ■ approached the defendant while his partner walked to the other man. After detaining the defendant, Sergeant Baldassaro walked over to where he had initially seen the defendant and found three marijuana 17cigars. The defendant was arrested for possession of marijuana and advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694-(1966). The defendant gave his address as 2125 Allen Street.
Sergeant Kevin Burns testified that on October 7, 2009, he assisted Detective Desmond Pratt with a pre-warrant surveillance of 2125 Allen Street (a search warrant had already been obtained for 2125 Allen Street) and observed the defendant come from the left side of the house at 2125 Allen Street and walk towards the 2200 block of Allen Street. The defendant walked towards the officer’s vehicle and peeked into the windshield. Sergeant Burns, assuming the defendant identified him as a police officer called for back up as the defendant walked away. The defendant was apprehended in the 2400 block of Allen Street and Sergeant Burns identified him at trial as the person he was observed leave -the residence at 2125 Allen Street.
Detective Desmond Pratt testified that on October 7, 2009, he was assigned to the Homicide Division and, as part of a homicide investigation, applied for and obtained a search warrant for 2125. Allen Street. He testified that when the search warrant was executed, only the defendant’s grandmother, Mary Hill, was at home. Detective Pratt related the during the search of the room believed to be the defendant’s, they recovered a weight scale, a package of baggies, the defendant’s identification card, papers in the defendant’s name, thirty-two live nine millimeter rounds and forty live forty-five millimeter rounds. Defense counsel, objected to the testimony, arguing that' testimony related to a gun was irrelevant to the possession with intent. to distribute cocaine and marijuana charges and, as such, more prejudicial than probative. The trial judge agreed, sustaining the objection but then reversed himself after the sidebar, allowing Detective Pratt to testify that a' nine | smillimeter Taurus handgun was found in the defendant’s grandmother’s bedroom. Defense counsel moved for a mistrial based on that testimony but the trial judge denied the motion. Over defense counsel’s objection, the State submitted (as State Exhibit 12) a box containing the 9 millimeter Taurus handgun, the two clips found in the handgun, a plastic bag containing another clip, and 32 9-millimeter live rounds.
Officer James Pollard, a iatent print examiner with the New Orleans Police Department, was stipulated to be an expert in the taking and examination of fingerprints. Officer Pollard testified that he took the defendant’s fingerprints in court and compared defendant’s fingerprints with fingerprints found in certified pen packs of the *1268 defendant’s prior convictions that were introduced into evidence at trial. Pollard stated that the fingerprints found in the pen packs matched the defendant’s fingerprints.
Mary Dean Hill, the defendant’s mother, testified that the defendant lived at 2125 •Allen Street with her. She declared that, after Hurricane Katrina, she repaired her home with Road Home funds and insurance proceeds. According to Ms. Hill, the defendant did not contribute financially to the house repairs and, in fact, she paid the defendant and one of his friends to clean the house after the hurricane. Mrs. Hall testified that her husband, who is how deceased, had been a hunter and kept guns in'fhe house. She stated that the defendant did not know about the weapons in the house and that the gun found in her house was oné of the guns her husband had owned. The gun was kept in a box in a closet. Mrs. Hill said she never saw the defendant with a gun.
Charles Joseph, Sr., testified that he resided at 203.1 Allen Street and one .of his sons owns the house across the street from him at 2032 Allen Street. The house |flwas abandoned for a while after Hurricane Katrina and he had been made aware that some people were using the house to, sell drugs. Mr. Joseph said he saw some young men at the house but that he never, saw the defendant selling drugs from 2032 Allen Street, further, Mr. Joseph testified that the,, defendant did not hang around the house and he did not see him around the house on April 28, 2009,
Sergeant James Tyler testified on rebuttal concerning audiotapes of defendant’s jailhouse telephone calls. The officer identified a listing of the phone calls made by the defendant and a CD recording of the phone calls. The recordings, were played for the jury.

Errors Patent

A review of the record reveals that there is no evidence that the defendant was arraigned. However, La.Code Crim. Proc. art. 555 provides in pertinent part that the “failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.” In this case, the appellate record is devoid of any evidence that the defendant objected prior to trial based upon his failure to be arraigned.

Assignment of Error 1

In his first assignment of error, the defendant contends that he was denied his constitutional right to a fair trial because the trial court forced him to go to trial without prior notice. The record reveals no evidence, however, that the defendant objected to proceeding with trial on April 3, 2012. Specifically, the trial transcript and minute entries do not bear any notations that the defendant objected to the alleged lack of notice. Rather, ’the minute entries reveal that trial had. been continued several times, on the motions of both the State and the defendant. According to the minute entries, notices were sent to defense counsel on January 18, 2012 and March 3,2012.
La.Code Crim. Proc. art. 841(A) .provides that “[a]n irregularity or error cannot be availed of after verdict unless it was objécted .to at the time of occurrence.” Accordingly, because the defendant failed to object, we are precluded from reviewing this assignment of error.

Assignment of Error 2

In this assignment,1 the defendant asserts that his multiple offender adjudication and sentence are erroneous because the-trial court did'not (1) personally inform the defendant of the allegations of the *1269 multiple bill of information; (2) allow the defendant-fifteen days to file objections to the multiple bill; and (3) conduct a contradictory hearing on;the; multiple bill.
A review of the-hearing conducted on May 25, 2012, reveals the State informed the trial court that it had filed a multiple bill of information alleging the defendant to be a fourth felony offender. The defendant stated that he was not admitting to the allegations of the multiple bill of information. The State then informed the trial court that it was relying upon the trial testimony of Officer Pollard and the pen packets introduced at trial to prove the defendant was a fourth felony offender. The trial court then referenced Officer Pollard’s testimony and found the defendant to be a fourth felony offender. The trial court vacated the original sentence imposed on the attempted possession with intent to distribute cocaine count and re-sentenced the defendant as a hiultiple offender on that conviction.
The hearing transcript reveals- that the defendant did not object to proceeding with the multiple bill hearing or to.not having Officer Pollard testify at the hearing. lnThe defendant made no contemporaneous objection to the trial court’s failure to (1) personally inform him .'of the allegations of the multiple bill of information; (2) allow the defendant fifteen days to file objections to the multiple bill; and (3)conduct a contradictory hearing on the multiple bill. The only objections made by the defendant concerned the trial court’s finding that the defendant was a multiple offender and the sentence imposed. The defendant’s failure to object precludes appellate review of this assignment of ’error. See La.Code Crim. Proc. art. 841.

Assignment of Error 3

The defendant also argues that' trial court erred in relying on evidence presented as Prieur evidence at trial as support for the multiple offender adjudication. At the multiple, bill hearing, the State did not produce Officer Pollard to testify. The State asked the trial court to reference the testimony Pollard gave during trial concerning the defendant’s prior convictions. The State informed the trial court that it was relying upon several of the prior convictions as support for the multiple offender adjudication. The trial court did not require the State to produce Officer Pollard at the multiple bill hearing and found the defendant -to be a multiple offender based upon- Pollard’s trial testimony. Again, the defendant failed to object to the State’s use of Officer Pollard’s testimony in this manner. Thus, under La.Code Crim. Proc. art. 841, the defendant is precluded from raising this issue on appeal.
In his appellate brief, the defendant also appears to argue that the Officer Pollard’s testimony and the pen packets introduced were not sufficient to prove the defendant was a multiple offender. The multiple bill of information alleges the defendant is a fourth felony offender based upon three prior convictions: | ^possession of cocaine in 1999, possession of marijuana-second offense in 2004 and possession of cocaine in-2008.
In order for a defendant to receive an enhanced penalty under La.Rev.Stat. 15:529.1, the State must prove prior felony convictions and then prove the defendant is the- same person who committed the prior felonies. State v. Martin, 2013-0628, p. 14 (La.App. 4 Cir. 5/28/14), 141 So.3d 933, 942-943, writ denied, 2014-1250 (La.1/23/15), 159 So.3d 1056 (citing State v. Blackwell, 377 So.2d 110 (La.1979)). “Both the identity and the prior conviction alleged must be proven beyond a reasonable doubt.” Martin, supra, 141 So.3d at 943 (citing La,Rev.Stat. 15:529.1(D)(l)(b)). Various methods of proof , establishing *1270 identity have been recognized as sufficient to sustain the State’s burden of proof, including testimony of witnesses, expert opinion as to fingerprints, and photographs contained in duly authenticated records. Martin, supra (citing State v. Brown, 514 So.2d 99, 106 (La.1987)); see also State v. Stanfield, 2013-1198, p. 9 (La.App. 4 Cir. 3/26/14), 137 So.3d 788, 794, writ denied, 2014-0833 (La.11/21/14), 160 So.3d 969 (citation omitted) (no requirement to match fingerprints on the bill of information of initial 'crime to prove that the defendant charged as a habitual offender is the same person previously convicted).
11sIn this case, the certified pen packets for each of the three prior convictions were introduced into evidence at the trial on the merits. In case number 404-918, the defendant pleaded guilty to possession of cocaine on April 20, 1999, and was sentenced to two years at hard labor, but the sentence was suspended and he was placed on two years active probation. The pen packet includes the bill of information with fingerprints, a signed waiver of rights/ guilty plea form, the docket master, the minute entry for the guilty plea and the arrest register.
In case number 436-382, the defendant pleaded guilty to possession of marijuana-second offense on October 13, 2004, and was sentenced to eighteen months at hard labor. The pen packet for case number 436-382 includes the bill of information, the waiver of rights/guilty plea form signed by the defendant and his attorney, the docket master, the minute entry for the guilty plea and the arrest register. On June 10, 2008, the defendant pleaded guilty to possession of cocaine in case number 456-648 and was sentenced to eleven months, with credit for time served. The pen packet for case number 456-648 includes the bill of information with fingerprints, a signed waiver of rights/guilty plea form, the docket master, the minute entry for the guilty plea and the arrest register.
Officer Pollard testified at trial that he compared the defendant’s fingerprints with the fingerprints found the on the bills of information contained in the pen packets for cases 404-918 and 456-382, and he concluded that the fingerprints matched the defendant’s prints. Officer Pollard also reviewed.-the documents in the pen packet for case 436-382 and compared the defendant’s social security number and date of birth with the social security number and date of birth on the arrest register for case number 436-382. The officer found the social security number and date of birth to be the same. Officer Pollard testified that the state identification number, defendant’s name, date of birth, offense charged, location of arrest and date of arrest on the arrest register matched a certified copy of the arrest register that Officer Pollard had in his files. The certified copy of the arrest register contained fingerprints that matched the defendant’s prints.
Officer Pollard’s testimony identifying the defendant’s fingerprints and the corroborating documentary evidence found in the certified pen packets is sufficient to establish the defendant’s identity and status as a fourth felony offender. | ^^Accordingly, the trial court did not err when it concluded that the defendant was a fourth felony offender and this assignment of error is without merit.

Assignment of Error 4

In this assignment, the defendant contends that the trial court erred in admitting inculpatory statements despite the State’s failure to adhere to discovery requests. The statements to which the defendant refers are statements made during jailhouse phone calls by the defendant. A CD of the phone calls was introduced during rebuttal by the State and played for *1271 the jury. The phone calls were introduced as rebuttal evidence to Mr. Joseph’s testimony that he never saw the defendant sell drugs.
■The defendant contends that the State should not have been allowed to introduce the phone calls because the. information about the phone calls was not provided to the defendant during discovery. The defendant argues the phone calls included potentially inculpatory statements that the State should have disclosed to the defendant during discovery.
At the time of trial, La.Code Crim. Proc. art. 716 provided:
A. Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, including recorded testimony before a grand jury, or copy thereof, of the defendant in the possession, custody, control, or. knowledge of the district attorney.
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature made by the defendant . which the district attorney intends to offer in evidence at the trial, with the information as to when, where, and to whom such oral confession or statement was made.
C. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the | estate intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant .to be a law enforcement officer.. ■ ,
The discovery rules, La.Code Crim. Proc. art. 716 et seq., are intended to eliminate any unwarranted prejudice that could arise from surprise testimony. State v. Hartford, 2014-0643, p. 6 (La.App. 4 Cir. 3/18/15), 162 So.3d 1202, 1211. Not every failure of compliance with these rules automatically requires' a reversal; but when “such a failure results in prejudice to a defendant, it does necessarily constitute reversible error.” Id. Thus, when the State fails to comply with the discovery rules, the appellate court must determine whether the defendant was actually prejudiced by the nondisclosure and whether the trial court abused its discretion.. Id. Notably, however, the effects of a discovery violation may be remedied by effective cross-examination. Id. (citing State v. Vaccaro, 411 So.2d 415, 427-428 (La.1982)).
Because the State- “does not and cannot know what evidence the defendant will use until it is presented at the trial,” the" State has the right to rebut evidence presented by the defendant at triál. State v. Williams, 445 So.2d 1171, 1180-81 (La.1984) (citation omitted). “Proper rebuttal evidence is offered to explain, repel, counteract or disprove facts given .in evidence by an adverse party.” State v. Deboue, 552 So.2d 355, 362 (La.1989) (citation omitted).
In the present case, the defendant’s recorded jailhouse telephone calls were introduced to rebut the testimony of Mr. Joseph -that he never saw the defendant selling drugs from 2032 Allen Street; he never saw the defendant hang around the house; and he did not see the defendant around the house on April 28,-2009. The phone calls included statements by the defendant that he had his stash underneath the house. The defendant was recorded *1272 instructing two people where they could |1fifind his stash underneath the house. The trial transcript indicates that the State had no .intention of introducing the telephone calls until Mr; Joseph testified that he never saw the defendant around his son's house and never saw the defendant Selling. drugs.. The telephone calls were appropriate rebuttal evidence which the State did not have to provide to the defendant prior to trial. The trial court did not abuse its discretion in allowing the State to introduce the phone calls into evidence. This assignment of error is without merit.

Assignment of Error 5

Lastly, the defendant argues that the trial court imposed a constitutionally excessive and illegal sentence for the conviction-of attempted possession of marijuana. The docket master entry and the-minute entry of the sentencing hearing held ■ on May 25, 2012, indicate that the trial court sentenced the defendant to ten years at hard labor on the conviction for attempted possession of marijuana. However, the transcript of the sentencing hearing reveals that the defendant was sentenced to ninety days in Orleans Parish Prison for the conviction of attempted possession of marijuana. ...
 When there is a conflict between á minute entry and a transcript, the transcript controls. State v. Fortenberry, 2011-0022, p. 5 (La.App. 4 Cir. 7/27/11), 73 So.3d 391, 394 (citation omitted) Therefore, the sentence imposed by the trial court is not illegal and we remand the matter back to the district court with instructions- to amend -the pertinent docket master and minute entry from sentencing to conform with the transcript and, in accordance with La.Code Crim. Proc. art. 892(B)(2), direct the Clerk of Court for Criminal Court to transmit the corrected documents to the officer in charge of the .institution to. which defendant 117has been sentenced and to the Louisiana Department of Corrections Legal Department. ■

Pro se Assignment of Error

• The defendant argues pro se that he “was denied due process of law when the evidence of a crime unrelated and dissimilar to the crime charged was offered as evidence during trial” pursuant to Prieur and La.Code Evid. 404(B)(1) over the objections of defense counsel. The defendant asserts that the State went “overboard” with its other crime evidence and, specifically, that the trial court erred in allowing evidence of the gun and live rounds of ammunition to be displayed to the. jury. Specifically, the defendant objects to the introduction at trial of the weapon and live rounds seized pursuant to an a search warrant executed by Detective Pratt on October 7, 2009, five months after the defendant’s arrest in the instant matter and in relation to a homicide investigation.
The record indicates that the State initially filed a Prieur notice of its intent to introduce the defendant’s eight prior arrests related to narcotics distribution but the trial judge limited introduction of evidence of the prior bad acts to those cases that resulted in the defendant’s (five) convictions. The State- sought supervisory review of this decision, resulting in the Louisiana Supreme Court decision that “[i]n a prosecution for possession of contraband drugs with intent to distribute, evidence of prior acts of distribution is admissible on the question of specific intent.” See State v. Hill, 2011-2585 (La.3/9/12), 82 So.3d 267 (per curiam ). The State then filed its second Prieur notice of its intent to introduce evidence of the hand to hand transaction that took place on April 28, 2009, just prior to the defendant’s arrest in the instant matter and evidence discovered pursuant to a search warrant at the defen *1273 dant’s resident on October 7, 2009, ie., the weapon and |18live rounds of ammunition subsequently introduced at trial through the testimony of Detective Pratt.
According to the defendant’s pro se narrative, when the State filed its second Pri-eur notice, the defense strenuously objected to the introduction of this evidence, but was overruled by Judge Derbigny. A review of the record indicates- that on January 13, 2012, the State filed its second Prieur notice of intent to introduce evidence including the gun and ammunition seized pursuant to the search warrant (executed on October 7, 2009). The docket entry for March 6, 2012, indicates that the defense filed a motion in limine objecting to the-State’s second Prieur notice; the motion does not appear in the record before this court. - Although the docket entry for March 6, 2012, indicates that the ruling on defendant’s motion was set for April 3, 2012, the docket entry for that date does not indicate a ruling was made pertinent to the. admissibility of the evidence seized (the gun and ammunition) pursuant to the search warrant, nor does the record include a pertinent written judgment or hearing transcript. Notably, neither party objected to a trial court ruling on the admissibility of the gun and ammunition, nor sought supervisory review of such a decision.
At trial, as previously indicated, Detective Pratt testified as to the search executed on October 7, 2009, and the discovery of the gun and ammunition. Defense counsel objected to the testimony, arguing that testimony related to a gun was irrelevant to the possession with intent to distribute cocaine and marijuana charges and, as such, more prejudicial than probative. The trial judge agreed, sustaining the objection but then reversed himself after the sidebar, allowing Detective Pratt to testify that a nine millimeter Taurus handgun was found in the- defendant’s grandmother’s bedroom. Defense counsel moved for a mistrial based | )9on that testimony but the trial judge denied the motion. Over defense -counsel’s objection, the State submitted into evidence (as State Exhibit 12) a box containing the 9 millimeter Taurus handgun, the two clips found in the handgun, a plastic bag containing another clip, and 32 9-millimeter live rounds.
To the' extent the defendant complains pro se.that the State -went “overboard” with its other crimes evidence, the admission of evidence pertaining to the defendant’s related arrests and convictions (and, implicitly, its cumulative impact) has already been ruled upon by the Louisiana Supreme' Court. See State v. Hill, supra. Although the impact of admitting the gun and ammunition appears more prejudicial than probative, the appropriate time to contest that issue "was immediately after the State filed its second Prieur notice indicating its intention to introduce this evidence. The docket master indicates that defense counsel filed a motion in li-mine in response to State’s. notice of intent, but the motion itself does not appear in the record before this court, nor is there a transcript of a hearing related to the motion or any indication that the defendant sought supervisory review of an adverse ruling on the issue. Similarly, although the trial transcript indicates that defense counsel objected to admission of this evidence at trial, the defense did not seek supervisory review of the trial court decision overruling the objection or denying defense counsel’s motion for a mistrial. Moreover, after review of the record in this matter, even if admission of the gun and ammunition was error, we do not find that such error affected the defendant’s substantial rights, see La.Code Crim. Proc. art. 921" (judgment will not be reversed because of error not affecting sub *1274 stantial rights of accused); State v. Johnson, 94-1379, p. 13-14 (La.11/27/96), 664 So.2d 94, 100 (issue in harmless error analysis is whether trial error contributed to the verdict,, thereby affecting -defendant’s substantial rights, or |2nwas unimportant in relation to everything else the jury considered), and, therefore, is not reversible error.
The defendant also argues that the trial court erred in denying defense counsel’s motion for a mistrial after the State questioned his mother as to her knowledgé that the defendant pleaded guilty in federal court to being a convicted felon in possession of a firearm and for possession with intent to distribute marijuana. The State’s question was in response to Ms. Hill’s testimony that the defendant knew nothing about the gun found in her bedroom pursuant to the search warrant and, thus, the defendant’s argument on this issue is without merit.

Conclusion

The defendant’s convictions and sentences are affirmed and the matter is remanded back to the district court with instructions to amend the pertinent docket master and minute entry from the sentencing hearing to conform with transcript of the sentencing hearing. The district court shall direct the Clerk of Court for Criminal Court to transmit the corrected documents to the officer in charge of the institution to which defendant has been sentenced and to the Louisiana Department of Corrections Legal Department.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.
LOBRANO, J., concurs in the result.

. State v. Prieur, 277 So.2d 126 (La.1973)

. The parties stipulated to the testimony of Officer Corey Hall, an expert in the testing ■ and analysis of controlled dangerous substances. Hall tested the substances found in the Popeye’s bag. The officer determined that the green matter in tire baggies tested positive for marijuana, -and the small rock like substances tested positive for cocaine.