SANDRA CABRINA JENKINS, Judge.
11 Defendant Jubbard Price appeals his convictions and sentences for five counts of simple kidnapping and two counts of negligent homicide. In a consolidated writ application, the State seeks review of the trial court’s finding that Defendant was not a second-felony habitual offender.
For the reasons that follow, we reverse Defendant’s convictions and vacate his sentences on the simple kidnapping counts, counts 1 through 5, and remand for a new trial on those five counts. We affirm Defendant’s convictions and sentences for negligent homicide, counts 7 and 8. Finally, in light of our reversal of counts 1 through 5, we grant the State’s writ application. The judgment of January 9, 2015, finding that the State failed to prove the identity of the defendant in the predicate offense is vacated. This matter is remanded to the trial court for further proceedings consistent with this opinion.
STATEMENT OF THE CASE
On May 3, 2013, Defendant was charged by grand jury indictment, in Counts 1 through 5, with second degree kidnapping in violation of La. R.S. 14:44.1; and in Counts 6 through 8, with second degree murder in violation of La. R.S. 14:30.1. Defendant was tried by a twelve-person jury on June 9 through 13, | ⅞2014, and found guilty of five counts of simple kidnapping; not guilty of negligent homicide, as to Count 6; and guilty of negligent homicide, as to Counts 7 and 8. Defendant waived sentencing delays and was sentenced on October 17, 2014 to five years imprisonment at hard labor on each of Counts 1 through 5, 7, and 8, with all sentences to run consecutively. The trial court also fined Defendant $5,000 on each of the seven counts. The trial court granted Defendant’s motion for appeal. The State filed a multiple bill of information alleging that Defendant was a second-felony habitual offender; at a January 9, 2015 hearing, the trial court found Defendant was not a habitual offender.
*1022 The State timely noticed and filed an application for supervisory review of the trial court’s habitual offender judgment. That writ was consolidated with Defendant’s appeal in the present case.
FACTS
Defendant was convicted of the January 12, 2012 simple kidnapping of Keishauna Keppard, Alisia White, Reyland Berry, Keris Lackings, and Lavonda Hayes; and negligent homicide in the killings of Keish-auna Keppard and Reyland Berry on that same date.
On the morning of January 12, 2012, the police received a 911 call concerning a shooting at a residence on Devine Street in New Orleans East. The residence was owned by Troy Leslie who lived there with his family and numerous houseguests. Mr. Leslie was shot to death that day, along with his 20-year-old daughter, Keishauna Keppard, and one of his house-guests, Reyland Berry. Two other persons at the residence, Katrina Davis and Lavonda Hayes, were shot but survived. Victims Alisia White and Keris Lackings were not injured.
Evidence at trial revealed that Donald Johnson, Andrea Price, and Jubbard Price entered Mr. Leslie’s residence and began corralling everyone into the garage |aby giving them the false impression that they were all going to smoke marijuana. The Defendant stayed in the garage and held everyone at gunpoint while Andrea Price and Donald Johnson roamed around the residence, presumably looking for a safe. Donald Johnson went into the master bedroom and shot Mr. Leslie and Ms. Davis in their bed, killing Mr. Leslie and injuring Ms. Davis.
Andrea Price testified that Defendant pointed a gun at the five people in the garage, Keishauna Keppard, Lavonda Hayes, Reyland Berry, Alisia White, and Keris Lackings, and told them to get on the ground. Ms. Price testified that when Reyland Berry emerged from the garage and tried to shoot her, Donald Johnson shot and killed Mr. Berry. Ms. Price also testified that she saw Donald Johnson and Defendant taking a large safe out of the house and loading it into Mr. Leslie’s car. She stated that she flagged the car down, and got in. She said that when the defendants stopped at a red light, the police pulled up behind them and ordered them out of the car. She testified that Donald Johnson kept driving and crashed the car into a pole. Andrea Price stated that after the crash, she and Defendant got out of the car. Donald Johnson started shooting at the police, who returned fire, shooting and killing Johnson. Andrea Price and Defendant were also shot during the exchange. A safe was found in the vehicle in which Donald Johnson, Andrea Price, and Defendant had been driving.
Several other witnesses testified and evidence was introduced during trial to corroborate the testimony of Ms. Price.
Pro Se Assignment of Error No. 1
Defendant argues that the verdicts of guilty of simple kidnapping returned by the jury in Counts 1 through 5 of the indictment were not responsive to the indictments, all five of which charged Defendant with second degree kidnapping, and that he is entitled to have his convictions reversed as to Counts 1 through 5. l4We find merit to this argument, and reverse Defendant’s convictions and sentences in Counts 1 through 5, and remand the case for a new trial on those counts.
A non-responsive verdict is a patent error which does not require a contemporaneous objection. State v. Jones, 13-1118, p. 6 (La.App. 4 Cir. 1/30/14), 156 So.3d 126, 129. La. C.Cr.P. art. 814(A) lists a number of offenses and responsive verdicts for those offenses. La. C.Cr.P. art. 814(A), *1023 however, does not list the offense of second degree kidnapping nor does it provide any responsive verdicts to that offense. La. C.Cr.P. art. 815 states that the responsive verdicts in all cases not provided for in La. C.Cr.P. art. 814 are guilty; guilty of a lesser and included grade of the offense charged; and not guilty. The Louisiana Supreme Court defines lesser and included offenses as “those in which all of the essential elements of the lesser offense are also elements of the greater offense charged.” State v. Graham, 14-1801, p. 5 (La.10/14/15), 180 So.3d 271, 275. If any reasonable state of facts can be imagined wherein the greater offense is committed without perpetration of the lesser offense, a verdict for the lesser cannot be responsive. Id.
Defendant was charged with second degree kidnapping, which is defined in La. R.S. 14:44.1 as the doing of any of the acts listed in Subsection B wherein the victim is: (1) used as a shield or hostage; (2) used to commit or flee from a felony; (3) physically injured or sexually abused; (4) imprisoned or kidnapped for 72 or more hours; or (5) imprisoned or kidnapped when the offender is armed, or reasonably believed to be armed, with a dangerous weapon. La. R.S. 14:44,1(A). Under subsection B, kidnapping is the: (1) forcible seizing or carrying of any person from one place to another; or (2) the enticing or persuading of any person to go from |sone place to another; or (3) the imprisoning or forcible secreting of any person. La. R.S. 14:44.1(B).
Thus, under La. R.S. 14:44.1, the crime of second degree kidnapping is completed by doing any one of the three acts listed in Subsection B, wherein the perpetrator also does any one of the five acts listed in Subsection A to the victim—one act from “column” B plus one act from “column” A equals second degree kidnapping. Thus, assuming an offender commits just one act listed in Subsection B and does just one thing with the victim listed in Subsection A, there are fifteen possible ways in which an offender can commit the offense of second degree kidnapping.
The jury convicted Defendant of simple kidnapping, which is defined by La. R.S. 14:45 as the intentional and forcible seizing and carrying of any person from place to place without his consent, and the intentional taking, enticing or decoying away of certain persons without consent.
There are five possible scenarios in which the evidence sufficient to support a conviction for second degree kidnapping would necessarily support a conviction for simple kidnapping—all involving the offender forcibly seizing and carrying the victim from one place to another. See La. R.S. 14:44.1(B)(1) and (A)(l)-(5), and La. R.S. 14:45(A)(1). However, there are ten other scenarios in which the evidence sufficient to support a conviction for second degree kidnapping would definitely not support a conviction for simple kidnapping. See La. R.S. 14:44.1(B)(2) & (3) and (A)(1)-(5). Put another way, it is clear that a reasonable state of facts can be imagined where the greater offense of second degree kidnapping is committed without perpetration of the lesser offense of simple kidnapping.
IfiWe find that simple kidnapping was not a responsive verdict to the charged offense of second degree kidnapping in Counts 1 through 5 of the indictment. Accordingly, we reverse Defendant’s convictions for simple kidnapping in Counts 1 through 5, and remand the case for a new trial on those five counts.
Pro Se Assignment of Error No. 2.
Defendant argues that the evidence was insufficient to support his convictions as to all seven counts. Because we reverse Defendant’s convictions on the five counts of *1024 simple kidnapping, we address only Defendant’s convictions for negligent homicide.
Defendant was convicted in Counts 7 and 8 of negligent homicide in the deaths of Keishauna Keppard and Reyland Berry. Negligent homicide is defined as the “killing of a human being by criminal negligence.” La. R.S. 14:32(A), “Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.” La. R.S. 14:12.
The evidence presented at trial shows that Defendant held five people at gunpoint while his accomplice murdered three people, and injured two others. After the kidnappings and murders, Defendant took a safe from the residence of one of the murder victims, and fled in a car stolen from the decedent.
We find that the evidence is far more than sufficient to support Defendant’s convictions for two counts of negligent homicide.
Pro Se Assignments of Error No. 3 and 4.
Defendant argues that trial counsel rendered ineffective assistance in: (1) failing to instruct the jury as to the effect of impeachment testimony;, (2) failing to 17ob.ject once the State was allowed to improperly impeach their witnesses; (3) failing to move for a mistrial on the ground that the trial court failed to caution the jury as to the effect of impeachment testimony; and (4) failing to move for a mistrial once the State was allowed to improperly impeach those witnesses.
Defendant also argues that the trial court erred in failing to instruct the jury as to “the effect to be given impeachment testimony”; in allowing the State to impeach its witnesses by playing their prior statements made to investigating officers; in overruling defense counsel’s objection to the State using witnesses’ recorded statements to bolster their testimony; and in overruling defense counsel’s objection to the State using a witness’s recorded statement to lead her.
All the claims in both of these pro se assignments of error relate to the State’s playing, during the testimony of several witnesses, their respective recorded statements made to investigating police officers.
In order to prevail on a claim of ineffective assistance of counsel, Defendant must show that: (1) counsel’s performance was deficient; and (2) he was prejudiced by the deficiency. State v. Barbain, 15-0404, p. 26 (La.App. 4 Cir. 11/4/15), 179 So.3d 770, 786. To carry his burden, Defendant must show that there is a reasonable probability that, but for counsel’s deficient performance, the result of the proceeding would have been different. Id.
Defendant fails to specify or remotely suggest how the playing of these recorded statements operated to impeach the testimony of any of the witnesses, to bolster the testimony of the witness, or to lead the witness. For the same reason, Defendant has failed to establish that the trial court “committed reversible error” in failing to caution the jury as to effect to be given impeachment testimony; in allowing the State to impeach its witnesses; in overruling his trial counsel’s [^objection to the State using a witness’s recorded statement to bolster her testimony or lead her.
Defendant cannot show that, but for counsel’s deficient performance, the jury’s verdict would have been different. We find no merit to this assignment of error.
*1025 Pro Se Assignment of Errors No. 5 and 6.
Defendant argues that his counsel was ineffective in failing to object when the State committed prosecutorial misconduct by knowingly using false and perjured testimony of defendant Andrea Price during trial.
Where a prosecutor allows a State witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness’s testimony reasonably could have affected the jury’s verdict, even if the testimony goes only to the credibility of the witness. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); State v. Broadway, 96-2659, p. 17 (La.10/19/99), 753 So.2d 801, 814. To prove a Napue claim, the defendant must show that the prosecutor acted in collusion with the witness to facilitate false testimony. Broadway, 96-2659 at p. 17, 753 So.2d at 814. Furthermore, fundamental fairness, i.e., due process, is offended “when the State, although not soliciting false evidence, allows it to go.uncorrected when it appears.” Napue, 360 U.S. at 269, 79 S.Ct. at 1177. When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. Giglio v. United States, 406 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, the grant of a new trial based upon a Napue violation is proper only if: (1) the statements at issue are shown to be ^actually false; (2) the prosecution knew they were false; and (3) the statements were material. United States v. O’Keefe, 128 F.3d 885, 893 (5th Cir.1997).
Defendant refers to alleged testimony by Andrea Price that Defendant and Donald Johnson dragged Troy Leslie’s safe from the residence, put it in Mr. Leslie’s car, drove off, and picked, her up. Defendant argues that Ms. White contradicted Andrea Price’s testimony when Ms. White stated that Defendant did not drag a safe out of the residence or get into a car.
Defendant fails to show that Ms. Price’s statements were false and/or that the prosecution knew they were false. First, the fact that Ms. Price’s recollection of occurrences was different than those of Ms. White does not establish that Ms. Price’s statements were false. Further, even assuming that there were false statements, Defendant has failed to show that it was Ms. Price’s statements that were false, rather than those of Ms. White.
Accordingly, Defendant. has failed to show that Ms. Price’s statements were false and that the prosecution knew they were false. He has therefore failed to establish any deficient representation by his defense counsel in failing to object to this testimony by Ms. Price.
We find no merit to 'these assignments of error.
Pro Se Assignment of Error No. 7.
Defendant argues that the trial court erred in permitting Andrea Price to talk with her attorney in the middle of cross examination by defense counsel.
During defense counsel’s cross examination of Ms. Price, counsel asked to approach the bench, whereupon a bench conference was held. The trial court removed the jury from the courtroom before discussing the matter. The record reflects that Ms. Price asked the court if she could speak to her attorney. The trial h (Judge conferred with Ms. Price off the record, then ruled that she could consult with her attorney.
The record shows that Ms. Price did not interrupt defense counsel’s cross examination of her to ask to speak to her counsel. Instead, Ms. Price made use of defense *1026 counsel’s interruption of counsel’s cross examination of her to make the request.
Defendant cites no authority for the argument that the trial court erred in permitting the consultation. Defendant also fails to suggest any possible prejudice to him resulting from Ms. Price’s consultation •with her counsel. “A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.” La. C.Cr.P. art. 921.
Defendant has failed to show any error in the ruling of the trial court or prejudice to him as a consequence of the trial court’s ruling. Therefore, we find no merit to this assignment of error.
Pro Se Assignment of Error No. 8.
The Defendant argues that the trial court erred when it did not put its original jury instructions in the record.
The June 13, 2014 transcripts of the objections to the jury instructions reflect that defense counsel objected to changes requested by the State to certain paragraphs in the trial court’s original instructions. Defense counsel then requested that the trial court’s original instructions be filed into the record. The trial judge responded that she did not have a copy; that she had amended her instructions; and that she had “probably amended them permanently, some of those.”
|nThe record contains a copy of the trial court’s proposed jury instructions. A comparison of these instructions to the actual instructions given to the jury, as reflected by the June 13, 2014 transcript, shows that this copy of the trial court’s proposed jury instructions is the trial court’s “permanently” amended copy, not the original copy of proposed instructions considered in the unrecorded jury instruction conference. The above comments by the trial court when discussing the matter show that the court edited its original instructions on a computer without saving a digital or hard copy of the original instructions.
Defendant argues that because he cannot compare the court’s original proposed instructions with the amended ones he is unable to raise “proper claims to my trial lawyer objection [sic] to the jury instructions.”
Defendant’s argument essentially is that the record is incomplete for appellate purposes. La. Const, art. I, § 19 provides, in pertinent part: “No person shall be subjected to imprisonment ... without the right of review based upon a complete record of all evidence upon which the judgment is based.” La. C.Cr.P. art. 843 requires that, in a felony case such as the present one, the clerk or the court stenographer shall record all of the proceedings, including “charges by the court, and objections, questions, statements, and arguments of counsel.”
Defendant cites no authority for the argument that a written copy of the trial court’s original proposed jury instructions must be included in the record—whether the proposed instructions were amended before they were given to the jury or not. Jury instructions are not “evidence upon which the judgment is based,” as contemplated by La. Const, art. I, § 19. “Proposed” jury instructions/charges do not constitute “charges” by the court as contemplated by La. C.Cr.P. art. 843.
| i2The record contains a transcript of the trial court’s jury “charges” and defense counsel’s “objections” to those charges, in accordance with La. C.Cr.P. art. 843. Therefore, the record is not “incomplete” insofar as the jury “charges” or defense counsel’s “objections” thereto.
*1027 We find no merit to this assignment of error.
Counseled Assignment of Errors No. 1 and 2.
Defendant argues that his counsel was ineffective in failing to object to his seven consecutive maximum five-year sentences and seven maximum fines of $5,000 on each count as unconstitutionally excessive. Defendant also argues that his sentences/fines are unconstitutionally excessive.
Because we vacate Defendants’ sentences and fines on his convictions of five counts of simple kidnapping, we address only Defendants’ maximum consecutive sentences of five years and $5,000 in fines on each of his two convictions of negligent homicide.
The Louisiana Constitution explicitly prohibits excessive sentences. See La. Const, art. I, § 20. Even though a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Martin, 13-0628, p. 16 (La.App. 4 Cir. 5/28/14), 141 So.3d 933, 943. A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Wilson, 12-1765, p. 23 (La.App. 4 Cir. 2/12/14), 138 So.3d 661, 677. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense |1Rof justice. State v. Vargas-Alcerreca, 12-1070, p. 25 (La.App. 4 cir. 10/2/13), 126 So.3d 569, 583.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La. C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Jones, 12-0891, p. 39 (La.App. 4 Cir. 8/7/13), 122 So.3d 1065, 1087. If the reviewing court finds adequate compliance with La. C.Cr.P. art. 894.1, the court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious offenders. Id.
Even where there has not been full compliance with La. C.Cr.P. art. 894.1, however, resentencing is unnecessary where the record shows an adequate factual basis for the sentence imposed. State v. Santos-Castro, 12-0568, p. 30 (La.App. 4 Cir. 7/31/13), 120 So.3d 933, 951. Further, La. C.Cr.P. art. 881.4(D) expressly states that an “appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.”
Defendant’s sentences on each of the two counts of negligent homicide are the maximum—imprisonment at hard labor for five years, and a fine of $5,000. The trial court ordered both five-year sentences to be served consecutively, and imposed two fines of $5,000.
Defendant argues that he is not one of the “most egregious offenders” for whom maximum sentences are “reserved.” Jones, supra.
In sentencing Defendant, the trial court went over the facts of the case, noting that Defendant held five people at gunpoint while his accomplice murdered |uthree people. The court noted that because of Defendant’s actions, three persons lost their lives, two others were severely injured, both physically and emotionally; and those persons continue to carry their scars. The trial court referred to the cruelty exhibited toward the victims. The *1028 court called it a “horrific crime.” The court noted Defendant’s use of threats and actual violence and his use of a dangerous weapon, a fire arm. The court talked of the high-speed chase necessitated by Defendant and his co-perpetrators fleeing the scene of the crime in Mr. Leslie’s stolen car, with Mr. Leslie’s stolen safe. The court stated that it believed Defendant had received all the mercy to which he was entitled when the jury convicted him of all lesser offenses.
As for the consecutive nature of the two five-year sentences, La. C.Cr.P. art. 883 states that “[i]f the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.” When consecutive sentences are imposed for crimes arising out of the same act or transaction, the trial court must articulate particular justification for such sentences beyond a mere articulation of the standard sentencing guidelines set forth in La. C.Cr.P. art. 894.1. Martin, 13-0628 at p. 21, 141 So.3d at 946.
The trial court first gave reasons for sentencing Defendant to the maximum sentence of five years imprisonment at hard labor on each count. The court then ordered that each five-year sentence be served consecutively, stating separate reasons.
I base this on the cruelty to your victims, eight victims who were either killed or otherwise suffered injuries as a result of your actions, your use of threats and actual violence in carrying out several 11Boffenses, and your use of a dangerous weapon in the commission of these offenses. This was a horrific crime. I find the jury has given you all the mercy that you deserve.
Considering the totality of the circumstances, including the fact that no part of Defendant’s sentence is without the benefit of parole, probation or suspension of sentence, we find that the maximum sentences of imprisonment and maximum fines, as well as the running of the sentences of imprisonment consecutively, do not shock the conscience.
Thus, even assuming defense counsel’s failure to object to the sentences and fines was deficient, Defendant has failed to show there is a reasonable probability that, but for counsel’s deficient performance, he would have prevailed on his claims that the sentences and/or fines were unconstitutionally excessive in any way.
We find no merit to counseled Assignment of Errors No. 1 and 2.

State Writ Application No, 2015-K-0082.

The State argues that the trial court erred in finding that Defendant was not a second-felony habitual offender.
The State alleges that Defendant is a second-felony habitual offender based on two prior convictions resulting from guilty pleas entered on May 8, 2009, as to one count of illegal use of a weapon, a violation of La. R.S. 14:94; and one count of possession of a firearm with an obliterated serial number, a violation of La. R.S. 14:95.7. At the January 9, 2015 hearing on the multiple bill, the trial court found that the State did not prove that Defendant was the same person from the 2009 convictions alleged in the multiple bill of information.
IibA review of the record reflects that the State elected to multiple bill Defendant on all of the seven counts on which he was convicted. We have reversed Defendant’s convictions on five of these counts.
In light of our reversal, we grant the State’s writ application, and vacate the trial court’s January 9, 2015 judgment *1029 finding that Defendant is not a second-felony habitual offender. We further remand the matter to give the State the opportunity to re-file the multiple bill of information. We do not decide whether the trial court was correct in ruling that Defendant was not a second-felony habitual offender.
CONCLUSION
For the foregoing reasons, we reverse Defendant’s convictions and vacate his sentences and fines for simple kidnapping on Counts 1 through 5, and we remand the case for a new trial on those five counts. We further affirm Defendant’s convictions and consecutive sentences and fines for negligent homicide in Counts 7 and 8. Finally, we grant the State’s writ application, vacate the trial court’s judgment that Defendant was not a second-felony habitual offender, and remand the matter to give the State the opportunity to re-file the multiple bill of information.
AFFIRMED IN PART, REVERSED IN PART WRIT GRANTED, JUDGMENT VACATED, REMANDED
DYSART, J., concurs in the result.